Laverne ODUMES, Appellant,

v.

The STATE of Texas, Appellee.

No. 42176.

Court of Criminal Appeals of Texas.

June 25, 1969.

Rehearing Denied Oct. 22, 1969.

C. C. Divine, Houston, for appellant.

Carol S. Vance, Dist. Atty., James C. Brough and Allen L. Stilley, Asst. Dist. Attys., Houston, and Jim D. Vollers, State's Atty., Austin, for the State.

OPINION

ONION, Judge.

This appeal is from a conviction for murder without malice upon an indictment charging murder with malice. The punish-

ment of 2 years' confinement was assessed by the court after a jury verdict of guilty.

At the outset appellant challenges the sufficiency of the evidence to sustain her conviction.

Napoleon Roy Phillips testified that about midnight on October 22, 1967, he went to the West Texas Barbecue place in Harris County, Texas, to buy some barbecue; that as he was leaving he saw a man outside lying face down and a woman shouting "I killed my husband"; that he saw a knife lying a few feet from the man's body; that he immediately called an ambulance.

Phillips could not identify the appellant as the woman he saw but stated she was of the same appearance, height and size.

Wayne Hankins, a uniformed Houston police officer, testified he arrived at the West Texas Barbecue on the date in question about 12:30 a. m. and found the body of a man lying in the parking area; that after determining the man was dead he entered the building and when the appellant saw him she jumped up from a table and hollered "They have come to get me. I have killed him. They have come to get me"; that she kept repeating the same statements in a high pitched voice and seemed "very excited" and "emotionally upset"; that appellant informed him of the location of the knife which fit a knife scabbard found in her purse.

The deceased was shown to be one John Edwards who was shown to have lived at the same address as the appellant.

The medical examiner related that the cause of death was a stab wound to the aorta which could have been inflicted by the knife marked State's Exhibit No. 1 and identified as the knife found near the deceased's body.

The appellant did not testify or call any witnesses in her behalf at the guilt stage of the trial.

■ We conclude that the evidence is sufficient to support the conviction.

■ Nevertheless, we observe that appellant contends that the court erred in failing to charge the jury on the law of circumstantial evidence. Where there is direct evidence from any source that the defendant killed the deceased a charge on circumstantial evidence is not required, and proof that the defendant admitted or confessed to having killed the deceased is direct and not circumstantial evidence of the main inculpatory fact. 4 Branch's Ann. P.C., 2d ed., Sec. 2050, p. 358. Appellant urges, however, that her statements referred only to "him" or "my husband" and did not identify the deceased despite the fact there were no other dead bodies in the vicinity at the time. We observe, however, that a charge on circumstantial evidence is not necessary where the facts are in such close juxtaposition as to be equivalent to direct testimony. De La O v. State, Tex. Cr.App., 373 S.W.2d 501. Even if we were able to determine that such a charge was called for by the evidence, the record does not reflect compliance with the requirements of Articles 36.14 and 36.15, Vernon's Ann.C.C.P., that the defendant or his counsel present his objections to the charge and his special requested charges in writing to the court before the charge is read to the jury. Certainly no fundamental error is presented. Article 36.19, V.A.C.C.P.

Since a police offense report made at the time lists two witnesses who were not called by the State, the appellant seeks to rely upon the rule set forth in 24 Tex.Jur. 2d, Sec. 745, p. 427,[1] and followed in King

---

1. Where circumstantial evidence relied on by the prosecution is obviously weak, and where the record on appeal affirmatively shows not only that other testimony which would have cast additional light on the facts was available to the prosecution, but also that the prosecution did not introduce such other evidence or satisfactorily account for its failure to do so, the appellate court will treat the case as one showing reasonable doubt of the sufficiency of the evidence to support the conviction."

v. State, Tex.Cr.App., 396 S.W.2d 409. Only recently we had occasion to apply such rule in Ysasaga v. State, Tex.Cr.App., 444 S.W.2d 305.

■ Such rule has no application in cases where the prosecution relies upon direct evidence. Bell v. State, Tex.Cr.App., 434 S.W.2d 684; Watts v. State, Tex.Cr.App., 408 S.W.2d 106. As recognized in King v. State, supra, the rule is applicable only where the circumstantial evidence relied upon by the State is obviously weak and the record on appeal affirmatively shows not only that other testimony which would cast additional light on the facts was available to the prosecution but also that the State did not introduce such other evidence or satisfactorily account for its failure to do so.

In view of the circumstances described above and the failure of the record to show that the testimony of these two witnesses would have shed additional light on the facts, we decline to apply the rule.

Ground of error #1 is overruled.

In her second ground of error appellant contends the court erred in conversing with the jury. The matter arose in this manner. After the jury retired for the purpose of deliberation the jury submitted the following written request to the court:[2]

"(1) We would like the testimony of N. Phillips regarding any statements he made about what the defendant may have said.
"Foreman
"Jack Christiansen

"(2) Want the testimony of the first policeman regarding what he heard the defendant say.
"Foreman
"Jack Christiansen"

The court replied in writing as follows:

"Members of the Jury:

"In response to your request, you are instructed that the law provides that if the jury disagrees as to the statement of any witness, they may, upon application to the court, have read to them from the court reporter's notes that part of a witness' testimony on the particular point in dispute and no other.

"Therefore, you are instructed if you desire to have any testimony read to you, to notify the court in writing of the particular part or parts of any witnesses' testimony which is in dispute and which part you desire read to you."

The jury then made the following written request:

"(1) Some members of the Jury believe that N. Phillips testified that someone said 'I killed my husband.' Is there any testimony to this effect? Please have this read back to us.
"Foreman
"Jack Christiansen

"(2) We want read to us that part of the policeman testimony regard what he heard after entering the building and before he put anyone under arrest.
"Foreman
"Jack Christiansen"

Thereafter the jury was brought into open court in the presence of the appellant and her counsel and the record reflects the following:

"THE COURT: Members of the jury, your foreman is Jack Christiansen. Will you please respond in connection with the questions, Mr. Christiansen.

"After the last instructions I sent to you, may I assume that there is a dispute among some of the members of the

2. See Article 36.27, V.A.C.C.P.

jury concerning the testimony of Napoleon Phillips, where he testified 'That someone said "I killed my husband." Is there any testimony to this effect? Please have this read back to us.' Is that substantially your dispute, as to whether there is testimony to this effect?

"MR. CHRISTIANSEN: Yes.

"THE COURT: Now, in your second part of your question, 'We want read to us that part of the policeman's testimony regard what he heard after entering the building and before he put anyone under arrest.'

"Mr. Christiansen, may I assume that there is a dispute concerning that part of the officer's testimony concerning what he testified after entering the building and before he placed anyone under arrest, there is a dispute among the members of the jury?

"MR. CHRISTIANSEN: There is not a dispute on what we all heard. There is a dispute as to what part of his testimony was admissible as evidence and we should be considering.

"THE COURT: And that is concerning what the police officer's testimony was, concerning what he heard after entering the building and before he placed anyone under arrest?

"MR. CHRISTIANSEN: That is correct.

"THE COURT: There's no dispute as to what you heard this officer testify?

"MR. CHRISTIANSEN: That is correct. We know what he testified.

"THE COURT: Mr. Christiansen, is there some concern as to whether or not this is admissible testimony?

"MR. CHRISTIANSEN: Yes, sir.

"THE COURT: And you heard it, without any instructions from the Court to the contrary—

"MR. CHRISTIANSEN: We are confused as to where the instructions hold us to stop listening.

"THE COURT: I understand, I believe. Concerning your first question regarding Napoleon Phillips' testimony, I believe there has been isolated from the court reporter's notes certain testimony regarding that, that Mr. Phillips gave regarding your question. I have instructed the court reporter to isolate that in her notes and to read that at this time, read that portion of Napoleon Phillips' testimony bearing on the first question.

"(AT THIS TIME TESTIMONY WAS READ BY THE COURT REPORTER AS REFLECTED BY THE NOTE SENT TO THE COURT BY THE JURY.)"

■ To such procedure in open court there was no objection and no harm is shown. We do not view the same as a comment on the weight of the evidence. It appears that the court was attempting a careful compliance with the provisions of Article 36.28, V.A.C.C.P. We perceive no error. Ground of error #2 is overruled.

The judgment is affirmed.