Donald Ray KENDRICK, Appellant,

v.

The STATE of Texas, Appellee.

No. 45161.

Court of Criminal Appeals of Texas.

June 28, 1972.

McKool, McKool, Jones, Shoemaker & Turley, by Jim Law, Dallas, for appellant.

Henry Wade, Dist. Atty., and W. T. Westmoreland, Jr., Asst. Dist. Atty., Dallas, and Jim D. Vollers, State's Atty., Robert A. Huttash, Asst. State's Atty., Austin, for the State.

## OPINION

DALLY, Commissioner.

The conviction was for murder; the punishment, life imprisonment.

Ground of error number four challenges the sufficiency of the evidence to show "that April Tuft, and the woman described as having been shot in the 7–Eleven Store were one and the same person."

The appellant's statement, admitted into evidence, in part is as follows:

"I know Charles Robinson and I have known him for almost three years. One night about a month or so ago Charles came to my house and said, 'Let's go riding around.' We rode around for a long time and got to talking. . . . 'let's go rob something.' We drove around and went by some service station and a 7–11 Store close to Sears. Finally we went out on Greenville and Forest Lane. . . . let's rob that 7–11 Store where that lady is. Charles parked his car behind a Shamrock Service Station close to a house. I got a 12 gauge pump shotgun out of the car and we walked across a field to the 7–11 Store. There was someone in the phone booth and a lady on the side in a station wagon close to the washateria. We went inside the store and a lady was by herself there. I told her that it was a stick-up. She said, 'You got to be kidding.' Charles tried to open the cash register. The lady grabbed the phone and said, 'I'm being robbed.' About this time the gun went off. . . . The lady was shot and we ran out. When we got half way across

the field, a car drove up in front of the store. I think that it was a white car. It stayed there. We went to Charles' car and he drove us home. I left the shotgun in the car. We did not get any money or anything in the store."

On January 27, 1970, at about 4:00 p. m., Pat Lowe stopped at the Seven-Eleven Store at the corner of Greenville Avenue and Forest Lane and saw her roommate, April Tuft, who was employed there. Later that evening she talked by telephone with April Tuft at about 8:30 p. m. and again at 10:45 p. m. When Pat Lowe called April Tuft at 10:45 p. m. Miss Tuft did not say "hello" but said "the store is being robbed. Call the police." While still listening on the telephone, she heard a gunshot and her roommate groan a few times. Pat Lowe identified a picture of April Tuft which had been made by the pathologist who performed the autopsy.

Hugh Lawson testified he was using the telephone in a booth next to the Seven-Eleven Store on Greenville Avenue and Forest Lane at approximately 10:45 p. m. on January 27, 1970. He heard two loud noises close together. "A couple of fellows came running around the corner" saying "call the police." They said someone had been shot in the store. Lawson hung up the phone and they called the police.

Francis Reed, manager of a dental laboratory, on his way from the airport at about 10:55 p. m., stopped to get some cigarettes at the Seven-Eleven Store. Reed saw the girl that he had seen working at the store before, slumped over on the floor. "She was coughing and kind of more or less trying to breathe and coughing—and was in a pool of blood there." The phone was off the hook and covered with blood. Reed called for an ambulance and the police.

The Medical Examiner testified that he performed an autopsy on the body of April Tuft. Her "lungs, heart and ribs were completely destroyed from the shotgun blast—April Tuft died as a result of a shotgun wound to the chest."

The evidence is amply sufficient to show that April Tuft, the alleged victim, was the same woman described as being shot at the Seven-Eleven Store. Compare Ware v. State, 480 S.W.2d 707 (No. 45,022, June 7, 1972). Ground of error number four is overruled.

Appellant's first two grounds of error urge that his written statement was improperly admitted into evidence because it was not shown that he knowingly and intelligently waived his constitutional rights and the totality of the circumstances under which it was made rendered it involuntary and inadmissible.

At the time objection was made to the admission into evidence of appellant's statement, a hearing was held out of the presence of the jury to determine its admissibility, in compliance with Article 38.-22, Vernon's Ann.C.C.P. and Jackson v. Denno, 378 U.S. 368, 84 S.Ct. 1774, 12 L. Ed.2d 908 (1964). After the hearing the trial court entered of record findings of fact and law that the statement was voluntary and thereafter admitted the statement into evidence.

The court submitted to the jury appropriate instructions concerning the voluntariness of the statement and the jury made a special finding that it was voluntarily made.[1] The evidence supports the finding of the trial court and the special finding of the jury.

The evidence shows that the sixteen-year-old appellant, after he had been awakened at approximately 12:15 a. m. on February 13, 1970, at his family's home, was arrested by three officers, armed with a search warrant. He was placed in a police car and taken approximately ten miles

1. While the court in this case submitted a charge requiring a special finding by the jury on the voluntariness of the confession, such a submission and special finding by the jury is not required by law.

to the police station. One of the arresting officers, F. E. Babb, advised the appellant of his constitutional rights as required by Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966). Babb only asked appellant general questions such as his birth date and where he attended school. Officer Wilkerson saw the appellant soon after 1:00 a. m. when the appellant was brought to the police station and advised him of his constitutional rights. Wilkerson then arranged for a magistrate to advise the appellant of his constitutional rights. At approximately 2:00 a. m. the appellant was taken with Robinson and Conley (alleged participants in the crime) before a magistrate who advised them of their constitutional rights as provided by Article 15.17, V.A.C.C.P. At the police station the appellant was placed and remained in a small room from the time of his arrival until the statement was made, except for the time he was taken before the magistrate. Several officers were in and out of the room; appellant answered general questions such as the name of his parents. He told the officers he had heard of the murder of the woman at the Seven-Eleven Store but he did not know anything about it.

At approximately 3:30 to 3:45 a. m. Officer Rose introduced himself to appellant and advised the appellant of his constitutional rights in accordance with Article 38.22, V.A.C.C.P. and Miranda v. Arizona, *supra.* Rose testified he did not tell the appellant that he had already taken a statement from his companion Robinson. The appellant, an eleventh grade student, testified that he told the officer he did not want an attorney. The statement was taken by the officer in "longhand" and was typed by another officer. After it had been typed it was read to appellant by Officer Rose in the presence of Lorin Wilhelm, a "newsman" with KBOX Radio Station. Wilhelm signed the statement acknowledging that he had witnessed the appellant sign the statement.

We conclude that the record supports the findings of the trial judge and the jury that appellant's statement was made voluntarily and not in violation of the Constitution or laws of this State or the United States and was properly admitted into evidence. See and compare Grayson v. State, 438 S.W.2d 553 (Tex.Cr.App.1969); Casias v. State, 452 S.W.2d 483 (Tex.Cr.App. 1970); Nash v. State, 467 S.W.2d 414 (Tex.Cr.App.1971); Whitaker v. State, 467 S.W.2d 264 (Tex.Cr.App.1971); Garza v. State, 469 S.W.2d 169 (Tex.Cr.App. 1971).

Further, the appellant apparently as a matter of trial strategy, introduced as defense exhibits twelve copies of the appellant's statement and had them distributed to the jury so they might follow the reading of the statement as the appellant read the statement when he testified.

■ The appellant's third ground of error is that "The trial court committed reversible error in refusing to allow the testimony of an expert witness called by the defense for the purpose of interpreting the accused's National Achievement test scores."

The witness was a guidance counselor at Lake Highlands High School and was the custodian of certain records purporting to be scores of various tests administered to the appellant. The tests had not been administered by nor under the supervision of the witness.

Assuming that the witness was a qualified expert and that the test scores required the interpretation of an expert, the appellant cannot be heard to complain because the records bearing the test scores were not properly authenticated and offered into evidence before the jury. Although the records were admitted for purposes of a bill of exception concerning the exclusion of the testimony of that witness, they were not authenticated and offered before the jury. The records were not in

evidence and the exclusion of the witness's testimony regarding the records and test scores was not error.

 The appellant's ground of error number five complaining of the court's refusal to instruct the jury on the law of circumstantial evidence is without merit. The refusal to give an instruction on circumstantial evidence was proper in view of the appellant's written confession admitting the shooting of the victim. Garza v. State, 468 S.W.2d 440 (Tex.Cr.App.1971); Dominguez v. State, 445 S.W.2d 729 (Tex.Cr.App.1969); Odumes v. State, 445 S.W.2d 218 (Tex.Cr.App.1969); Patterson v. State, 416 S.W.2d 816 (Tex.Cr.App.1967); and Hintz v. State, 396 S.W.2d 411 (Tex.Cr.App.1965).

The appellant's last ground of error is that "The trial court committed reversible error in exhibiting bias and prejudice to the jury by his conduct and demeanor throughout the trial and further by commenting repeatedly upon the weight and sufficiency of the evidence."

The record, by way of motion for new trial or by other means, does not reflect the exhibition of "bias and prejudice" or the "conduct and demeanor" of the trial court alleged in this ground of error.

 In support of this ground of error the appellant designates in the record several comments of the trial judge made during the course of the trial. These several alleged grounds of error were not "set forth separately" as required by Article 40.09 § 9, V.A.C.C.P.; there is, therefore, not a proper ground of error for our consideration.

 However, we have concluded that the comments complained of, if properly before us, would not constitute reversible error in this case.

The judgment is affirmed.

Opinion Approved by the Court.