**James David WINGO, Appellant,**

v.

**The STATE of Texas, Appellee.**

No. 04–02–00662–CR.

Court of Appeals of Texas, San Antonio.

June 16, 2004.

Susan A. Edwards, Law Office of Susan Edwards, Dean Diachin, San Antonio, for Appellant.

Enrico B. Valdez, Asst. Criminal Dist. Atty., San Antonio, or Appellee.

Sitting: ALMA L. LÓPEZ, Chief Justice, CATHERINE STONE, Justice, PAUL W. GREEN, Justice.

## OPINION

Opinion by: ALMA L. LÓPEZ, Chief Justice.

Our opinion and judgment dated January 7, 2004 are withdrawn, and this opinion and judgment are substituted.

This is an appeal of a conviction for the offense of tampering with a governmental record following a jury trial. The appellant, James David Wingo ("Wingo"), raises six issues on appeal: (1) the trial court erred in overruling Wingo's objection to the State's improper commitment questions during the specific voir dire of venire member Carreon, (2) the evidence is legally and factually insufficient to support Wingo's conviction and to disprove his statutory defense, (3) the jury charge negated Wingo's statutory defense, (4) Wingo's counsel provided ineffective assistance by failing to test whether the State's charges were brought in bad faith, (5) Wingo's counsel provided ineffective assis-

tance by failing to request a jury instruction on a lesser-included offense, and (6) the supplemental jury charge constituted an improper comment on the weight of the evidence.

## BACKGROUND

Officers James David Wingo and Ezra Bailey became partners in a phone company that was an authorized dealer for Simple Communications. They worked closely with Laura Gonzalez, who was an employee of Simple Communications. Gonzalez and Officer Bailey sold a cellular phone to Deborah Guevara and issued a phone on credit to her sister, Linda Fresco. Gonzalez subsequently informed Wingo and Officer Bailey that Fresco had an outstanding balance, which Gonzalez was required to pay upon losing her job. Gonzalez wanted some action taken to collect the balance. Gonzalez and Officer Bailey made several attempts to collect the balance from Fresco.

Officer Wingo testified that, on the night of November 11, 2000, he decided to complete an incident report for Gonzalez's benefit while he was on patrol close to Fresco's place of employment. Wingo went into the bar where Fresco worked, asked for Fresco, and they went outside to speak. Wingo testified that he met with Fresco in order to obtain information from her so that he could complete an incident report. Fresco testified that Wingo told her that he had a warrant for her arrest. She asked him what she could do to avoid the arrest, and he told her to pay him the balance owed on the phone. She gave him the money and asked for a receipt. Fresco asked Wingo to sign Officer Bailey's name on a "Post-it" note where Fresco wrote "Paid in Full," but he initialed it "E.B." Wingo later met with Officer Bailey and gave him the money to give to Gonzalez.

After his shift, Wingo completed an incident report but realized that he had failed to complete a property receipt and a property release form. Wingo testified that in order to justify the absence of a property form showing that he had given the property to Officer Bailey, Wingo reported on the incident report that Gonzalez wanted police to standby while she picked up some items owed to her and that Fresco gave Gonzalez the money. He admitted that the report was "not a hundred percent accurate," but he asserted that the "essence" of the transaction was accurately reported, e.g. "money was owned, money was paid."

Wingo was charged with two felony offenses, official oppression and tampering with a government record. Wingo entered a plea of not guilty. After hearing all of the evidence, the jury found Wingo guilty of tampering with a government record but acquitted him of the official oppression charge.

## COMMITMENT QUESTIONS

In his first issue on appeal, Wingo contends that the trial court erred in overruling his objection to the State's improper commitment questions during the specific voir dire of venire member Carreon. The State responds that the challenged questions were not commitment questions and that Wingo was not harmed by the alleged error because he failed to exhaust all of his peremptory challenges.

The general rule is that an attorney cannot attempt to bind or commit a venire member to a verdict based on a hypothetical set of facts. *Allridge v. State*, 850 S.W.2d 471, 480 (Tex.Crim.App.1991). Questions that commit prospective jurors to a position, using a hypothetical or otherwise, are improper and serve no purpose other than to commit the jury to a specific set of facts before the presentation of any

evidence at trial. *Lydia v. State,* 109 S.W.3d 495, 497 (Tex.Crim.App.2003). To determine if the voir dire question calls for an improper commitment, we must determine (1) whether the question is a commitment question, and (2) whether the question includes only those facts that lead to a valid challenge for cause. *Standefer v. State,* 59 S.W.3d 177, 182 (Tex.Crim.App. 2001). If the answer to the first question is "yes" and the answer to the second question is "no," then the voir dire question is an improper commitment question. *Id.* at 182–183.

 Commitment questions "commit a prospective juror to resolve, or to refrain from resolving, an issue a certain way after learning a particular fact." *Lydia,* 109 S.W.3d at 498. These questions tend to require a "yes" or "no" answer, in which one or both of the possible answers commits the jury to resolving an issue a certain way. *Id.* Commitment questions may contain words such as "consider," "would," and "could." *Id.*

 A commitment question can be proper or improper, depending on whether the question leads to a valid challenge for cause. *Id.* at 498. The law requires jurors to make certain commitments. *Standefer,* 59 S.W.3d at 181. Therefore, attorneys may ask the prospective jurors whether they can follow the law in that regard. *Id.* Additionally, to be proper, "a commitment question must contain *only* those facts necessary to test whether a prospective juror is challengeable for cause." *Id.* at 182. Thus, commitment questions are improper when (1) the law does not require a commitment; or (2) the question adds facts beyond those necessary to establish a challenge for cause. *Lydia,* 109 S.W.3d at 498.

 Although the trial court may exercise discretion in conducting voir dire, the allowance of an improper question represents an abuse of discretion. *Atkins v. State,* 951 S.W.2d 787, 789 (Tex.Crim.App. 1997).

During the State's specific voir dire of venire member Carreon, the following exchange and ruling took place:

Q. What about tampering with a government record? And [another venire member] brought out that *police officers do write police reports. Do you believe there's anything wrong with putting false information in a police report?*

MR. MICHAEL McCRUM [Wingo's counsel]: Objection, Judge. That's the same line of questioning as before.

The COURT: Overruled. He just asked him—

MR. MICHAEL McCRUM: Anything wrong with that type of offense.

The COURT: Right. Overruled.

MR. MICHAEL McCRUM: Note my objection.

Q. Do you have any problem with a police officer putting false information in a police report?

A. Yes.

Q. Okay.

(emphasis added).

The questioning of the other venire member referenced by defense counsel included the question, "And on a police report, if they put something false in there, which would be tampering with a government record, would you have a problem finding someone guilty if the State proves a case beyond a reasonable doubt?" Wingo objected to the question, and the trial court sustained the objection.

Wingo argues that the question "Do you believe there's anything wrong with putting false information in a police report?" was a commitment question. The Court of

Criminal Appeals recently addressed an improper voir dire question in *Lydia v. State,* where the prosecutor asked, "Do each of you feel as though you could evaluate a witness and his testimony and decide if he's being truthful without automatically dismissing his testimony because of some criminal history?" 109 S.W.3d at 499. The Court held that the question was a commitment question because it asked the jurors to resolve witness credibility (issue) based on the knowledge that the witness had a criminal history (particular fact). *Id.* at 499. The Court held that the prosecutor did not ask whether the venire members could impartially evaluate testimony, but instead asked the venire members to resolve an issue in the case based on a particular fact. *Id.*

██ Similarly, the question in this case is a commitment question. The State sought a commitment on an issue in the case (i.e. culpability of conduct) from the venire member based on a particular fact (i.e. an officer putting false information in a police report). Although the State asked whether the venire member believed there was "anything wrong" with this particular kind of falsehood, direct committal language is not necessary. Commitment questions may contain words such as "consider," "would," and "could." *Lydia,* 109 S.W.3d at 498.

Additionally, the question is improper because it does not include only those facts necessary to test whether a venire member is challengeable for cause. *Standefer,* 59 S.W.3d at 182. The State did not ask whether the venire member could impartially apply the law, which is a proper commitment question that would give rise to a valid challenge for cause. *Lydia,* 109 S.W.3d at 499. Furthermore, even if the question was construed to give rise to a challenge for cause, the State's question was rendered improper by the use of facts

beyond those necessary to sustain a challenge for cause. *Standefer,* 59 S.W.3d at 182. The law refers to a "person" and a "government record," while the State's question unnecessarily included "police officer" and "police report." Tex. Pen.Code Ann. § 37.10(a)(1) (Vernon 2003). Therefore, the trial court abused its discretion in allowing the State's improper commitment question.

██ Except for certain federal constitutional errors deemed "structural," no error is categorically immune from a harmless error analysis. *Gonzales v. State,* 994 S.W.2d 170, 171 (Tex.Crim.App.1999). Since the United States Supreme Court has never held that erroneously restricting proper questions during voir dire or that erroneously allowing improper commitment questioning is structural error of a federal constitutional nature, we must apply a harm analysis. *See Gonzales,* 994 S.W.2d at 171 & n. 4.

██ The Court of Criminal Appeals has applied the same harm analysis to voir dire error that does not constitute structural error of a federal constitutional nature. The harm analysis "traditionally applied to the erroneous denial of a defendant's challenge for cause also applies to the erroneous *prohibition* of proper questioning of individual prospective jurors." *Anson v. State,* 959 S.W.2d 203, 204 (Tex. Crim.App.1997) (emphasis added). Under this analysis, a defendant is harmed only if (1) he exhausts all of his peremptory challenges, (2) he requests more challenges, (3) his request is denied, and (4) he identifies an objectionable person seated on the jury on whom he would have exercised a peremptory challenge.

██ This harm analysis is equally appropriate where the trial court erroneously *allows* improper commitment questioning of individual prospective jurors.

Where the prospective juror is allowed to make an improper commitment, the prospective juror becomes biased with regard to that issue, as he will seek to abide by the commitment made during voir dire. Thus, whether the error is the denial of a challenge for cause or the allowance of an improper commitment question, a juror challengeable for cause is left on the panel. Under the harm analysis traditionally applied to voir dire error, the trial court's error in allowing improper commitment questioning of prospective jurors was harmless because Wingo failed to exhaust all of his peremptory challenges, to request additional peremptory challenges, or to identify an objectionable person seated on the jury. *See Anson,* 959 S.W.2d at 204.

The trial court's error was harmless. Wingo's first issue is overruled.

### LEGAL AND FACTUAL SUFFICIENCY

▆▆▆ In his second issue on appeal, Wingo contends that the trial court erred in finding the evidence legally and factually sufficient to support Wingo's conviction and to disprove his statutory defense. To determine the legal sufficiency of the evidence to support a conviction, we view all the evidence in the light most favorable to the verdict and ask if any rational trier of fact could have found the essential elements of the offense beyond a reasonable doubt. *See Jackson v. Virginia,* 443 U.S. 307, 319, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979). For a factual sufficiency review, an appellate court looks at all the evidence to determine whether it is so weak as to make the verdict clearly wrong and manifestly unjust or whether the adverse finding is against the great weight and preponderance of the available evidence. *Sims v. State,* 99 S.W.3d 600, 601 (Tex.Crim.App. 2003).

### Specific Intent to Harm or Defraud

The jury found Wingo guilty of tampering with a governmental record. A person commits this offense if they knowingly make a false entry in a governmental record. TEX. PEN.CODE ANN. § 37.10(a)(1) (Vernon 2003). A person also commits this offense if they make, present, or use a governmental record with knowledge of its falsity. TEX. PEN.CODE ANN. § 37.10(a)(5) (Vernon 2003). Because Wingo was charged with a state jail felony, the jury was required to find that he acted with intent to harm or defraud. TEX. PEN.CODE ANN. § 37.10©(1) (Vernon 2003). Wingo challenges the sufficiency of the evidence on the element of intent to harm or defraud.

▆▆▆ The evidence presented is measured against a hypothetically correct jury charge. *Malik v. State,* 953 S.W.2d 234, 240 (Tex.Crim.App.1997). The Texas Penal Code and the jury charge define harm as "anything reasonably regarded as loss, disadvantage, or injury, including harm to another person in whose welfare the person affected is interested." TEX. PEN.CODE ANN. § 1.07(a)(25) (Vernon 2003). Furthermore, the jury charge also defines "intent to defraud another" as a "conscious objective or desire to cause another to rely upon the falsity of the representation, such that the other person is 'induced to act' or 'is induced to refrain from acting.'" *See* 41 TEX. JUR.3D *Fraud and Deceit* § 9 (1998).

▆▆▆ The State can establish intent to defraud or harm by circumstantial evidence. *Burks v. State,* 693 S.W.2d 932, 936 (Tex.Crim.App.1985). The State argues that the circumstantial evidence is sufficient to show that Wingo intended to defraud the San Antonio Police Depart-

ment ("SAPD").[1] The State emphasizes the fact that Wingo made a false entry in the incident report and contends that Wingo did so to avoid sanctions for his conduct. Wingo counters that there was no evidence of his belief that he would get sanctioned and that the record is unclear as to how the false entry would have shielded him from future sanctions. Wingo contends that, in order to show that Wingo acted with specific intent to induce reliance on his report, the State was required to produce evidence showing either that Wingo's report would have been reviewed, or that all such reports are always reviewed. Wingo also contends that the State was required to show how SAPD either acted, or refrained from acting, in reliance upon the incident report.

■ In this case, we do not read the instruction to require a showing of actual reliance or action on the report as alleged by Wingo. Still, the record reflects that SAPD did take action upon the report after Fresco filed a complaint with the department; thus, any requirement for actual reliance on the report is satisfied. The State is required, however, to prove that Wingo had the specific intent to cause SAPD to rely on the incident report. Here, the circumstantial evidence indicates that Wingo made a false report to avoid sanctions. Tom Connolly, an internal affairs detective, testified that officers are only allowed to enforce criminal law and that officers are required to issue property receipts to protect citizens and property release forms to protect the department. Officer Bailey testified that an officer may receive administrative sanctions for getting involved in a civil dispute. The incident report falsely states that Laura Gonzalez was present and "wanted police to stand-by" while she picked up the money owed to her by Fresco. The events, as described in the incident report, do not show that Wingo was involved in a civil dispute nor do they require him to fill out a property receipt or release of property form because the report reflects a direct exchange of money. An accurate report, however, would have shown that Wingo improperly acted to collect a debt, which was a civil dispute, failed to fill out a property receipt, and failed to fill out a release of property form.

Furthermore, Wingo's own testimony demonstrates his intent to defraud SAPD. Wingo testified that he realized he had forgotten to fill out a property receipt and a release of property form when his shift ended. Wingo admitted that officers "can get in trouble administratively ... [and] can be suspended without pay" for not turning in property receipts. Additionally, he admitted that he decided to falsify the incident report in order to "justify [his] not having the property receipt forms." These admissions provide direct evidence of what Wingo believed could happen to him and provide circumstantial evidence of Wingo's specific intent, i.e. his conscious objective or desire to cause SAPD to rely upon the report, such that SAPD would be induced to refrain from taking administrative actions against Wingo. A juror could reasonably infer that Wingo falsified the incident report to conceal his conduct and avoid getting administratively sanctioned or reprimanded by the department. Viewed in the light most favorable to the verdict, the evidence was legally sufficient. *See Jackson,* 443 U.S. at 319, 99 S.Ct. 2781.

Additionally, Wingo contends that the circumstantial evidence supporting the

---

1. The jury charge asked the jury to determine whether Wingo possessed either the intent to harm or defraud Linda Fresco or the intent to harm or defraud the San Antonio Police Department.

verdict is greatly outweighed by contrary proof. Wingo argues that the overwhelming weight of the evidence shows Wingo did not intend to harm or defraud, but instead intended to document the essence of the transaction. Wingo construes his false entry in the incident report as a documentation of the essence of the transaction. He testified that he intended to correct his oversight in failing to give a property receipt by writing the report to reflect the direct exchange of money. Although Wingo did protect the parties by documenting the "essence" of the transaction, Wingo could have protected the parties by truthfully documenting the transaction. The falsity in the incident report only benefited Wingo. Upon reviewing all the evidence, we hold that the evidence was not so weak as to make the verdict clearly wrong and manifestly unjust. *See Sims*, 99 S.W.3d at 601. The evidence was legally and factually sufficient to show intent to defraud.

### Statutory Defense

■ It is a defense to prosecution for tampering with a governmental record that the false entry or false information could have no effect on the government's purpose for requiring a governmental record. TEX. PEN.CODE ANN. § 37.10(f) (Vernon 2003). Wingo contends that the evidence adduced at trial is legally and factually insufficient to show that the State disproved Wingo's defense beyond a reasonable doubt. Wingo contends that the evidence supporting the verdict is greatly outweighed by contrary proof of his statutory defense because the State offered no evidence to disprove that defense. Wingo, however, misstates the State's burden of proof.

■ Because Wingo asserted a defense under Penal Code section 2.03, and not an affirmative defense under section 2.04, the State had the ultimate burden of persuasion, requiring it to prove its case beyond a reasonable doubt. *Zuliani v. State*, 97 S.W.3d 589, 595 (Tex.Crim.App. 2003); TEX. PEN CODE ANN. §§ 2.03, 2.04 (Vernon 2003). However, the burden of persuasion is not one that requires the production of evidence; it requires only that the State prove its case beyond a reasonable doubt. *Saxton v. State*, 804 S.W.2d 910, 913 (Tex.Crim.App.1991). When a jury finds the defendant guilty, there is an implicit finding against the defensive theory. *Id.* at 914.

■ When a defendant challenges the legal sufficiency of the rejection of a defense, we view all the evidence in the light most favorable to the verdict and ask if "any rational trier of fact could have found the essential elements of the offense beyond a reasonable doubt *and also* could have found against appellant on the defensive issue beyond a reasonable doubt." *Adelman v. State*, 828 S.W.2d 418, 421 (Tex.Crim.App.1992) (emphasis added). When a defendant challenges the factual sufficiency of the rejection of a defense, the reviewing court reviews all of the evidence in a neutral light and asks whether the State's evidence taken alone is too weak to support the finding and whether the proof of guilt, although adequate if taken alone, is against the great weight and preponderance of the evidence. *Zuliani*, 97 S.W.3d at 595.

■ Despite Wingo's assertion that the State presented no evidence to disprove his defense, the State did offer the testimony of Detective Connolly, who testified that the purpose of filling out an incident report is to accurately document a specific event or action taken at the time. Wingo contends the State should have offered testimony of an official from the police department's record division to testify as to the official purpose of the incident re-

port. However, the State did not have that burden. Wingo also argues that witnesses testified that the purpose of the report varies in every situation. In response to questions posed to prosecution and defense witnesses about the purpose of incident reports, the witnesses consistently testified that the purpose is to accurately document what happened. The jury could reasonably infer that the elicited testimony regarding "varying purposes" spoke to the fact that the incident reports can have varying subsequent uses. Because Wingo's report did not accurately document the event, it affected the government's purpose for requiring the record. Therefore, the evidence was both legally and factually sufficient to support the implicit rejection of Wingo's defense.

Wingo's second issue is overruled.

### JURY CHARGE

In his third issue on appeal, Wingo contends that the trial court erred in its placement of instructions within the jury charge which negated his statutory defense, thereby rendering the jury charge fundamentally defective and denying Wingo's due process of law and a fair trial. The statutory definition of the defense and its application to the facts was included in paragraph VI of the jury charge, which also included definitions pertaining to the offense of tampering with a governmental record. The application paragraph, regarding the offense, followed in paragraph VII. Wingo argues that the placement and positioning of his statutory defense in the jury charge precluded him from having the defense clearly presented to the jury.

 The meaning of a jury charge must be taken from the whole charge, and jurors are not authorized to return a verdict except under those conditions given by the application paragraph of the charge. *Warfield v. State*, 974 S.W.2d 269, 271

(Tex.App.-San Antonio 1998, pet. ref'd) (citing *Plata v. State*, 926 S.W.2d 300, 302 (Tex.Crim.App.1996), *overruled on other grounds*, 953 S.W.2d 234 (1997)). The application paragraph applies the law to the facts, and asks an ultimate question of the jury about whether the defendant is guilty. *Degrate v. State*, 86 S.W.3d 751, 752 (Tex. App.-Waco 2002, pet. ref'd) (citing *Plata*, 926 S.W.2d at 302–03). A jury charge is adequate "if it either contains an application paragraph specifying all of the conditions to be met before a conviction [ ] is authorized, or contains an application paragraph authorizing a conviction under conditions specified by other paragraphs of the jury charge to which the application paragraph necessarily and unambiguously refers, or contains some *logically consistent combination* of such paragraphs." *Plata*, 926 S.W.2d at 304 (emphasis added).

 Relying on *Plata*, Wingo argues that the statutory defense was not logically arranged in relation to the application paragraph and that the charge amplified the meaning of the conviction language of the application paragraph and greatly diminished the relevance and importance of the statutory defense. However, Wingo cites no authority showing that the instructions on defensive issues must necessarily follow the application paragraph. Here, the statutory defense to tampering with a governmental record immediately preceded the application paragraph for this offense. We do not believe the trial court's arrangement of the jury charge was illogical or that placing the defensive instructions after the application paragraph was the only logical arrangement. Therefore, the trial court did not err in its arrangement of the defense and application paragraphs.

 Additionally, Article 36.19 of the Code of Criminal Procedure provides

that a "judgment shall not be reversed unless the error appearing from the record was calculated to injure the rights of defendant, or unless it appears from the record that the defendant has not had a fair and impartial trial." *Almanza v. State*, 686 S.W.2d 157, 160 (Tex.Crim.App. 1984). Because Wingo made no objection to the arrangement of the jury charge, any possible error by the trial court is reviewed for egregious harm. *Id.* at 171. Egregious harm only arises if the error is so severe that it deprived the accused of a fair and impartial trial. *Id.* The actual degree of harm must be determined from the "entire jury charge, the state of the evidence, including the contested issues and weight of probative evidence, the argument of counsel and any other relevant information revealed by the record of the trial as a whole." *Id.* In this case, the jury was properly instructed on the statutory defense and its application to the facts. The jury charge instructed, "if you do not find beyond a reasonable doubt that the false entry or false information, if any, could have had an effect on the government's purpose for requiring the governmental record you will find the defendant not guilty." Moreover, during closing argument, Wingo's counsel told the jury not to stop their deliberations on the issue of whether the statement was false, but to consider two additional questions: (1) whether Wingo was trying to defraud or harm someone; and (2) whether the false statement affected the purpose of the report. The State also argued to the jury as to the report's purpose and the falsity's effect on the report's purpose. Reviewing the record as a whole and considering arguendo that the trial court committed error, we hold that the trial court's arrangement of the jury charge did not constitute egregious harm.

Wingo's third issue is overruled.

## INEFFECTIVE ASSISTANCE OF COUNSEL

 In his fourth and fifth issues on appeal, Wingo contends that Wingo's trial counsel provided ineffective assistance (1) by making no attempt to test whether the State's charges had been brought against Wingo in bad faith, and (2) by failing to request a jury instruction on an applicable lesser-included offense. To prevail on a claim of ineffective assistance of counsel, Wingo must show that the act or omission of his counsel fell below the wide range of reasonable professional assistance, and that but for the deficiency, there is a reasonable probability the outcome would have been different. *Strickland v. Washington*, 466 U.S. 668, 690, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). Trial counsel is given wide discretion in using his professional judgment regarding decisions which may not produce a successful outcome. *Thompson v. State*, 9 S.W.3d 808, 813 (Tex.Crim.App.1999). The review of defense counsel's representation is highly deferential and presumes that counsel's actions or omissions fell within a wide range of reasonable professional assistance. *Mallett v. State*, 65 S.W.3d 59, 63 (Tex.Crim.App.2001). Although a single egregious error by trial counsel may be sufficient to constitute ineffective assistance, such an error must be firmly founded in the record, and the record must affirmatively demonstrate the alleged ineffectiveness. *Thompson*, 9 S.W.3d at 814. When the record is silent on the motivations underlying counsel's tactical decisions, the appellant usually cannot overcome the strong presumption that counsel's conduct was reasonable. *Mallett*, 65 S.W.3d at 63.

 In his fourth issue, Wingo contends that trial counsel's failure to challenge the State's motives for prosecuting his case was objectively unreasonable un-

der the facts of the case. Wingo contends that trial counsel mentioned a possible defense of prosecutorial misconduct in a pretrial hearing and indicated that he would address the issue with the court after putting it in context. Wingo asserts that counsel's failure to later raise the issue of prosecutorial misconduct or selective prosecution was an unreasonable oversight. However, Wingo misinterprets the record. When trial counsel made the statements relied upon by Wingo, the discussion on prosecutorial misconduct had ended, and trial counsel was referring to his intention of arguing "a plea to sympathy that [Wingo] might lose his job" later in the trial after placing the issue in context. The record does not affirmatively demonstrate counsel's intentions with regard to the issue of prosecutorial misconduct and selective prosecution. The record is silent as to whether trial counsel's failure to raise the issue of selective prosecution was a strategic decision or merely a negligent omission; therefore, the record is insufficient to rebut the presumption of reasonable counsel. *Mallett,* 65 S.W.3d at 63.

 In his fifth issue, Wingo contends that trial counsel's failure to request a jury instruction on an applicable lesser included offense was objectively unreasonable. The Penal Code provides for both misdemeanor and felony degrees of tampering with a government record. Tex. Pen.Code Ann. § 37.10©(1) (Vernon 2003). Wingo was charged with a state jail felony, which requires the additional showing of intent to defraud or harm another. Here, trial counsel conceded on the falsity issue, which is an element of the misdemeanor tampering charge, conceivably in order to gain credibility with the jury. During closing arguments, trial counsel instructed the jury to look beyond the falsity and consider the critical issue of intent to defraud or harm and the statutory defense.

Wingo contends that making an "all-or-nothing proposition" is unreasonable when counsel makes explicit arguments that could have rationally persuaded the jury that the defendant had done something blameworthy. However, Wingo cites to no authority in support of this proposition. The "defendant must overcome the presumption that, under the circumstances, the challenged action 'might be considered sound trial strategy.'" *Strickland,* 466 U.S. at 689, 104 S.Ct. 2052 (1984) (quoting *Michel v. Louisiana,* 350 U.S. 91, 101, 76 S.Ct. 158, 100 L.Ed. 83 (1955)); *see also Rylander v. State,* 101 S.W.3d 107, 110 (Tex.Crim.App.2003). Since counsel's conduct may be considered a sound trial strategy, Wingo has failed to demonstrate that trial counsel's conduct in failing to request the instruction was unreasonable.

The record failed to rebut the strong presumption of reasonable counsel; therefore, Wingo's fourth and fifth issues are overruled.

## SUPPLEMENTAL JURY CHARGE

In his sixth issue on appeal, Wingo contends that the trial court erroneously submitted a supplemental jury charge, which constituted an improper comment on the weight of the evidence and denied Wingo a fair and impartial trial. During deliberations, the jury sent out a note requesting the portion of Wingo's testimony where he testified "why he fill[ed] out a false report." In response, the judge instructed the jury in writing as follows:

The law does not permit a general reading of the testimony of any witness. If the members of the jury are in disagreement concerning the testimony of a particular witness on a specific point, I can have the court reporter read back that witness' testimony on that specific point, and no other, as best that specific

testimony can be selected from the recorded testimony.

In the event you should state to the court that you are in disagreement as to the testimony of a witness on a specific point, please understand that it will take some time for the court reporter to review the notes from the trial sufficiently to locate all of the testimony of that witness on the point in question, which of course will require a complete reading of all the witness' testimony. Please, therefore, be patient and do not delay further deliberation pending receipt of a response to your request.

Wingo contends that the trial court improperly raised the idea of disagreement over Wingo's testimony and thus had a coercive effect on deliberations concerning Wingo's intent to harm or defraud. Wingo also contends that the supplemental charge discouraged further deliberations on the critical issue of intent by unnecessarily explaining the administrative inconvenience of reading back testimony.

 Under Article 36.28 of the Texas Code of Criminal Procedure, the jury must disagree as to the statement of any witness before the testimony may be read back. Tex.Crim. Proc.Code Ann. art 36.28 (Vernon 1981). Where the jury requests evidence during deliberations, the trial court must determine whether that request is in compliance with article 36.28. *Robison v. State*, 888 S.W.2d 473, 480 (Tex. Crim.App.1994). A simple request for testimony does not by itself reflect disagreement, implicit or explicit, and is not a proper request under Article 36.28. *De-Graff v. State*, 962 S.W.2d 596, 598 (Tex. Crim.App.1998). The manner in which the trial court determines whether there is a factual dispute between the jurors is left to his sound discretion. *Robison*, 888 S.W.2d at 480.

 In this case, the note from the jury did not indicate whether there was disagreement about Wingo's testimony. In order to ascertain whether there was juror disagreement, the trial court properly sent back an instruction using the language contained in Article 36.28. *See Thrash v. State*, 482 S.W.2d 213, 214 (Tex. Crim.App.1972) (holding that the trial court properly responded to a request for testimony by instructing the jury in the terms of Article 36.28); *Cherry v. State*, 447 S.W.2d 154, 158 (Tex.Crim.App.1969) (holding that trial court complied with Article 36.28 and committed no error by instructing the jury that before any testimony on a particular point in dispute could be reproduced, the jury would have to indicate to the court their disagreement as to the testimony). The Court of Criminal Appeals has specifically stated that an exchange between the court and the jury does not amount to a comment on the evidence where the court simply attempts to ascertain whether there is disagreement as required by Article 36.28. *Odumes v. State*, 445 S.W.2d 218, 220–21 (Tex.Crim. App.1969) (holding that trial court did not comment on the evidence by questioning the jury foreman in open court in order to ascertain whether there was a disagreement with regard to the requested testimony). Therefore, the court did not abuse its discretion by submitting a supplemental charge that instructed the jury on Article 36.28's requirement of disagreement. *Robison*, 888 S.W.2d at 480.

 On appeal, Wingo also contends that the trial court abused its discretion in overruling his objection to the supplemental charge because the charge included unnecessary administrative instructions. However, Wingo did not preserve error on this point. Tex.R.App. P. 33.1(a). Instead of objecting to the inclusion of the administrative instructions, Wingo objected to

the court's supplemental charge arguing that the court should only instruct the jury "to rely on their own memory without suggesting to them to come back with an indication that there may be some disagreement" and that the word "disagreement" was vague. Moreover, even if properly preserved, the trial court's instructions on administrative matters did not constitute a comment on the weight of the evidence. *See* TEX.CODE CRIM. PROC. ANN. art 36.14 (Vernon 1981 & Supp.2003).

Wingo's sixth issue is overruled.

## CONCLUSION

The judgment of the trial court is affirmed.