James David WINGO, Appellant,

v.

The STATE of Texas.

No. PD–0615–04.

Court of Criminal Appeals of Texas.

Feb. 15, 2006.

Susan A. Edwards, San Antonio, for Appellant.

Enrico B. Valdez, Asst. Criminal District Atty., San Antonio, Matthew Paul, State's Atty., Austin, for State.

WOMACK, J., delivered the opinion of the Court, in which KELLER, P.J., and MEYERS, PRICE, JOHNSON, KEASLER, HOLCOMB, and COCHRAN, JJ., joined.

The issue in this appeal is whether it is an improper commitment question to ask a potential juror if he thinks particular criminal conduct is wrong. We hold that it was not in this case.

The appellant, a San Antonio police officer, was indicted for tampering with a governmental record by falsifying an offense report. During voir dire, the State asked a prospective juror, "Do you believe there's anything wrong with putting false information in a police report?" The defendant objected, arguing that it was an

improper commitment question. The court overruled the objection.

On the appeal from the conviction, the Court of Appeals held that the prosecutor's question was an improper commitment question that should not have been allowed, although it found the error to be harmless.[1] We granted review.

■■■ "Commitment questions are those that commit a prospective juror to resolve, or to refrain from resolving, an issue a certain way after learning a particular fact."[2] A question may be proper if it seeks to discover a juror's views on an issue applicable to the case. An otherwise proper question is impermissible, however, if it attempts to commit the juror to a particular verdict based on particular facts.[3]

The Court of Appeals' opinion said that the question at issue was comparable to the improper voir dire question in *Lydia v. State*,[4] which asked jurors whether they could believe a witness even if he had a criminal history. We disagree. To begin with, in *Lydia* the State asked the jurors a series of questions:

> The prosecutor asked of the entire panel, "Do each of you feel as though you could evaluate a witness and his testimony and decide if he's being truthful without automatically dismissing his testimony because of some criminal history?" This question, in various forms, was repeated to members of the panel on a group and individual basis. Expanding upon this hypothetical, the prosecutor asked the panel if it would make a dif-

ference if the crime committed by the witness was against the defendant. Also, the prosecutor asked one of the jurors "what kind of conviction would cause you to have a bias?"[5]

We held that the first two questions are commitment questions because they ask jurors to resolve issues concerning witness credibility based on a particular fact—the witness's criminal history or the fact that the witness committed a crime against the defendant. We also held the third question to be improper because it "asks the juror to define the parameters of his decision making [and] to define those crimes that will make a difference in his assessment of the witness' credibility."[6] We noted that the questions do not ask about whether the jurors could impartially evaluate testimony (which would not be a commitment question).

Other examples of improper questions include, "Could you find someone guilty on the testimony of one witness?" and "Could you find someone guilty on circumstantial evidence alone?" and "Could you consider probation in a case where the victim is a nun?" These impermissibly seek to commit jurors to convict on the evidence of a lone witness, to convict on circumstantial evidence, or to recommend probation even though a victim has a particular vocation.[7] No law requires a juror to do those things.

Similarly, in *Sells v. State*, we held the following four questions to be improper commitment questions: (1) "Would the minimum length of time a defendant could serve in prison before he could be paroled be something you would want to know in

1. *Wingo v. State*, 143 S.W.3d 178 (Tex.App.-San Antonio 2004).

2. *Standefer v. State*, 59 S.W.3d 177, 179 (Tex. Cr.App.2001).

3. *Id.*, at 181.

4. 109 S.W.3d 495 (Tex.Cr.App.2003).

5. *Id.*, at 499.

6. *Ibid.*

7. *Standefer, supra* note 2, at 183 n. 28.

answering the special issues?"; (2) "On which special issue would this be important? How would this 40–year minimum sentence be important to you in answering the special issues?"; (3) "Would you be more likely, or less likely, generally, to view a defendant as a continuing threat to society if you knew he could not be paroled for a minimum of 40 years?"; (4) "What kind of evidence would you expect, as a juror, to help you in considering the 40–year parole ineligibility factor when answering the special issue?" [8] We held that the questions related to how a particular fact—time served before eligibility for parole—might influence jury deliberations, "to commit the jurors to giving mitigating or aggravating effect to the minimum parole eligibility requirement." [9] They are not questions seeking to determine a juror's qualifications, personal background, or philosophical outlook on the justice system.[10]

 In this case, the question, "Do you believe there's anything wrong with putting false information in a police report?" did not ask for a commitment. Jurors are required to follow the law that makes it a crime for a police officer to tamper with a governmental record. Asking if they agree that the commission of such a crime is wrong does not commit them to resolve an issue of fact in a certain way. Rather, it inquires into the jurors' general beliefs as to the wrongness of conduct that the law has made a crime. Such questions are common when jurors are assembled for trials of "victimless" or "morals" crimes. This is not to say that a party has a right to ask such a question. The issue before us is whether a trial court has discretion to allow such a question. We hold that it does.

8.　121 S.W.3d 748, 755 (Tex.Cr.App.2003).

9.　*Id.,* at 756.

Having determined that the trial court did not err, we do not reach the issue of harm, of which we also granted review. Holding that the trial court committed no error, rather than harmless error, we affirm the Court of Appeals' judgment.

HERVEY, J., concurred in the judgment.