In The


Court of Appeals


Sixth Appellate District of Texas at Texarkana



______________________________



No. 06-07-00045-CR


______________________________




GARLAND RAY WILEY, JR., Appellant



V.



THE STATE OF TEXAS, Appellee




 


On Appeal from the 124th Judicial District Court


Gregg County, Texas


Trial Court No. 33689-B




 




Before Morriss, C.J., Carter and Moseley, JJ.


Memorandum Opinion by Justice Carter



MEMORANDUM OPINION



 Garland Ray Wiley, Jr., appeals his conviction by a jury for unlawful possession of a firearm
by a felon. When the car in which Wiley was a passenger was detained by the police, a pistol was
discovered underneath Wiley's leg. A jury found Wiley guilty as charged in the indictment. The jury
assessed punishment at five years' imprisonment, and the trial court sentenced Wiley consistent with
the jury's assessment. On appeal, Wiley argues the evidence is legally and factually insufficient. We
affirm.

The Evidence Is Legally Sufficient

 Wiley argues the evidence is legally insufficient because the evidence was insufficient to
prove he intentionally, knowingly, or consciously possessed the firearm. Wiley also argues there
were insufficient links to tend to connect him to the firearm. In our review of the legal sufficiency
of the evidence, we employ the standards set forth in Jackson v. Virginia, 443 U.S. 307, 319 (1979). 
This calls on the court to view the relevant evidence in the light most favorable to the verdict and
determine whether any rational trier of fact could have found the essential elements of the crime
beyond a reasonable doubt. Johnson v. State, 23 S.W.3d 1, 7 (Tex. Crim. App. 2000). In our review,
we must evaluate all of the evidence in the record, both direct and circumstantial, whether admissible
or inadmissible. Dewberry v. State, 4 S.W.3d 735, 740 (Tex. Crim. App. 1999); Johnson v. State,
871 S.W.2d 183, 186 (Tex. Crim. App. 1993). 

 Anitrias Glover testified that, on or about August 11, 2005, Stephen Glover, her nephew, and
other individuals started arguing in her yard. The argument escalated, and one of the individuals
started shooting. Stephen Glover was struck by the gunfire, but left the scene along with the other
individuals involved. Ms. Glover identified Wiley as one of the individuals present during the
shooting. 

 While investigating the shooting at Ms. Glover's residence, Officer Doug Brinkley, an officer
with the Longview Police Department, stopped a motor vehicle containing five males having some
similarities to the descriptions provided by Ms. Glover. The passenger in the right rear seat
identified himself as Stephen Glover, the passenger in the middle rear seat was Jose Rodrigues, (1) the
driver was Demetrius Williams, the passenger in the front seat was William Nelson, and the
passenger in the left rear seat was Wiley. Officer Lanie Smith, an officer with the Longview Police
Department, arrived at the scene in response to Brinkley's call for backup. As Brinkley approached
the vehicle, Glover appeared to lean forward and attempt to hide something. While Brinkley was
having the occupants of the car identify themselves, Smith observed a shotgun in the back seat
between Glover and Rodrigues. 

 Smith and Sergeant Brittenberg who had just arrived at the scene, requested Glover to exit
the car. After handcuffing Glover, Brittenberg removed a shotgun which was located between
Glover and Rodrigues. The officers then instructed Rodrigues and Nelson to exit the vehicle and
discovered another shotgun on the front passenger floorboard. Before Wiley was removed from the
vehicle, Brittenberg removed a pistol from underneath Wiley's right leg. Wiley was ultimately
charged with unlawful possession of the pistol after previously being convicted of a felony. The
State introduced evidence that Wiley had been previously convicted on or about August 1, 2003, of
possession of a controlled substance. 

 In order to prove unlawful possession of a firearm by a felon, the State must prove the
defendant has been previously convicted of a felony and possessed a firearm "after conviction and
before the fifth anniversary of the person's release from confinement following conviction of the
felony or the person's release from supervision under community supervision, parole, or mandatory
supervision, whichever date is later." Tex. Penal Code Ann. § 46.04(a)(1) (Vernon Supp. 2007). 
"[T]o support a conviction for possession of a firearm, the State must show (1) that the accused
exercised actual care, control, or custody of the firearm, (2) that he was conscious of his connection
with it, and (3) that he possessed the firearm knowingly or intentionally." Nguyen v. State, 54
S.W.3d 49, 52 (Tex. App.--Texarkana 2001, pet. ref'd). When the firearm is not found on the
accused's person or is not in the accused's exclusive possession, additional facts must link the
accused to the contraband. Id. at 53; Jones v. State, 963 S.W.2d 826, 830 (Tex. App.--Texarkana
1998, pet. ref'd). One of the factors that may link a defendant to the firearm is whether the
contraband was conveniently accessible to the accused. Nguyen, 54 S.W.3d at 53; Jones, 963
S.W.2d at 830. 

 The State can meet its burden with circumstantial evidence, but it must establish that the
defendant's connection with the firearm was more than fortuitous. Brown v. State, 911 S.W.2d 744,
747 (Tex. Crim. App. 1995). In this case, the firearm was found directly underneath Wiley's leg and
was touching his leg. As such, the firearm was clearly in close proximity to Wiley. The number of
links present is not as important as the degree to which they tend to link the defendant to the firearm. 
Washington v. State, 215 S.W.3d 551, 555 (Tex. App.--Texarkana 2007, no pet.); Taylor v. State,
106 S.W.3d 827, 831 (Tex. App.--Dallas 2003, no pet.). The fact that the firearm was directly
underneath Wiley's leg and in contact with his leg reveals such a close proximity and consciousness
of the firearm's presence to allow a rational juror to conclude beyond a reasonable doubt that Wiley
intentionally and knowingly was in possession of the firearm. 

The Evidence Is Factually Sufficient

 Wiley argues the evidence is factually insufficient because the evidence was insufficient to
prove he intentionally, knowingly, or consciously possessed the firearm. The vehicle did not belong
to Wiley, no ammunition was found on Wiley, and Wiley's fingerprints were not found on the gun. 
Further, Wiley denied possession of the pistol and testified he was in the car merely to obtain a ride
to his girlfriend's house.

 In a factual sufficiency review, we review all the evidence, but do so in a neutral light and
determine whether the evidence supporting the verdict is so weak or is so outweighed by the great
weight and preponderance of the evidence that the jury's verdict is clearly wrong or manifestly
unjust. Roberts v. State, 220 S.W.3d 521, 524 (Tex. Crim. App. 2007); Marshall v. State, 210
S.W.3d 618, 625 (Tex. Crim. App. 2006); Watson v. State, 204 S.W.3d 404, 414-15 (Tex. Crim.
App. 2006); Clewis v. State, 922 S.W.2d 126, 134 (Tex. Crim. App. 1996). The difference between
the standards for legal and factual sufficiency is that legal sufficiency requires the reviewing court
to defer to the jury's credibility and weight determinations while factual sufficiency permits the
reviewing court to substitute its judgment for the jury's on these questions "albeit to a very limited
degree." Marshall, 210 S.W.3d at 625. 

 Wiley was the sole witness for the defense. Wiley testified his sole purpose for getting into
the vehicle was to obtain a ride to his girlfriend's house. On cross-examination, Wiley admitted they
did not proceed directly to his girlfriend's house. Instead, Wiley testified they "slow blocked," which
apparently means to simply drive around. Although he admitted he knew there were guns in the car,
Wiley emphatically denied possessing any pistol. Wiley testified that Rodrigues had a pistol "stuck
in his pants" when he got into the car and that he felt Rodrigues slide something in his direction as
Rodrigues was removed from the vehicle. Detective Gary Shirley testified the pistol was submitted
for fingerprinting, but no fingerprints were recovered from the pistol. 

 Conflicts in the evidence are to be resolved by the jury. In doing so, it may accept one
version of facts and reject another or reject any of a witness' testimony. Penagraph v. State, 623
S.W.2d 341, 343 (Tex. Crim. App. 1981). Thus, the appellate court can consider only those few
matters bearing on credibility that can be fully determined from a cold appellate record. Johnson,
23 S.W.3d at 8. "Such an approach occasionally permits some credibility assessment but usually
requires deference to the jury's conclusion based on matters beyond the scope of the appellate court's
legitimate concern." Id. Thus, conflicts between witnesses will generally be inviolate, but the
validity of testimony can be treated as questionable because of other factors. Id. 

 Wiley admitted he knew there were guns in the car and testified he knew "they all would've
got out the car and started shooting" if they had seen certain individuals. Wiley also admitted he was
a convicted felon and was aware he was not supposed to possess a firearm. "Although an appellate
court reviewing factual sufficiency has the ability to second-guess the jury to a limited degree, the
review should still be deferential, with a high level of skepticism about the jury's verdict required
before a reversal can occur." Roberts, 220 S.W.3d at 524. We are unable to form the high level of
skepticism necessary to conclude the evidence is factually insufficient. 

 During our review of the record, we noted the judgment listed the "Statute for Offense" as
"46.02(a) Penal Code." We reform the judgment to reflect that Wiley was convicted under "Section
46.04(a) Penal Code" and affirm the judgment as reformed.


 Jack Carter

 Justice


Date Submitted: November 5, 2007

Date Decided: November 28, 2007


Do Not Publish
1. The spelling contained in the reporter's record.



te, 107 S.W.3d 646, 648 (Tex. App.--Texarkana 2003, no pet.) (citing Montgomery
v. State, 810 S.W.2d 372, 391 (Tex. Crim. App. 1990) (op. on reh'g)). In like fashion, the manner
in which the trial court determines whether there is a factual dispute between the jurors is left to the
court's sound discretion. Wingo v. State, 143 S.W.3d 178 (Tex. App.--San Antonio 2004), aff'd, 189
S.W.3d 270 (Tex. Crim. App. 2006). We think the supplemental charge provided by the trial court
to the jury succinctly and accurately informed the jury of the circumstances under which it could
receive a reiteration of a part of the testimony; each of the two subsequent notes sent by the jury
which requested a reading of excerpts from Keith's testimony were made with the full awareness of
the jury that the testimony could not be read for it unless there was disagreement among the jurors. 
The clearest message for the jury to have sent would have included a phrase to the effect that the
jurors disagreed; however, after having not received the results the jury requested after the first note
and then (after having received clear instructions from the court) crafting its request more
particularly, one can infer that the jury's motive was to settle a disagreement as to what had been
said. It was not necessary for the court to have repeatedly charged the jury with redundant
instructions with each request. 

 We find that the jury made a request for reiterations of the testimony based on its
disagreement and that the court acted properly in having the reporter read the testimony to the jury. 

 Even if the court had not acted properly in causing portions of the testimony to be read back
to the jury, complaints about error in the reading of trial testimony must be preserved by objection
at the time of the reading. Hollins v. State, 805 S.W.2d 475, 476 (Tex. Crim. App. 1991); May v.
State, 139 S.W.3d 93, 99 (Tex. App.--Texarkana 2004, pet. ref'd); Randon, 107 S.W.3d at 649. 
There was no timely objection; thus, we may not address this issue on its merits. The contention is
overruled.

Legal Sufficiency

 Keith complains that the evidence was insufficient to convict him of the crime of which he
was found guilty. He admits that he possessed a vial which he indicated contained less than a quarter
of a gram of methamphetamine, but that he did not have as much as a gram. He further avers that
the vial of methamphetamine which the law enforcement officers had said was in his possession was
different from the vial which he actually owned. 

 Contrarily, Officer Taylor testified that he found the lunch kit containing the vial of
methamphetamine in the bedroom after having been told by Keith that Keith had methamphetamine
in a lunch kit. Taylor further testified that the vial introduced into evidence was the vial found in
that lunch kit. Officer Taylor stated that he had sealed the evidence in an envelope and turned it over
to Officer David Salazar, who initialed it and transported it to the Department of Public Safety (DPS)
laboratory for testing, where its receipt was noted on the evidence envelope. Lynette Jonas, a
supervising forensic chemist with the DPS laboratory, testified that the contents of the vial had been
measured and that it contained 1.26 grams of methamphetamine. After having conducted testing and
measuring, the laboratory returned the evidence to its envelope, initialed the envelope, and returned
it to Officer Taylor, who then produced it for entry into evidence at the time of trial. Thus, a direct
chain of custody was preserved and established at trial. 

 In opposition to this, Keith introduced a different vial (apparently smaller, designed to hold
only one gram) than that which was introduced by the State, saying that the vial that he actually
owned was the size of the one he introduced; his contention was that the vial containing
methamphetamine which the State had introduced was different from and larger than the one which
he had in his possession that night. He maintained that although he was admittedly in possession
of methamphetamine, it was less than one gram and, therefore, he was guilty of a lesser crime than
that with which he was charged. 

 In reviewing the legal sufficiency of the evidence, we view the relevant evidence in the light
most favorable to the verdict and determine whether any rational trier of fact could have found the
essential elements of the crime beyond a reasonable doubt. Johnson v. State, 23 S.W.3d 1, 7 (Tex.
Crim. App. 2000). 

 Obviously, the story of Keith and the evidence provided by the State's witnesses cannot both
be correct. The jury was provided enough evidence from both to believe either, but the jury could
not believe both. The jury chose to believe the witnesses for the State, and there was legally
sufficient evidence on which the jury could rest its verdict. 

 We find that there was sufficient evidence for the jury to convict Keith of the crime with
which he was charged.

 No reversible error has been shown; we affirm the judgment.





 Bailey C. Moseley

 Justice


Date Submitted: January 24, 2007

Date Decided: March 6, 2007


Do Not Publish