**John CHAMBERS, Appellant,**

v.

**The STATE of Texas, Appellee.**

**NUMBER 13-16-00079-CR**

Court of Appeals of Texas,
Corpus Christi-Edinburg.

Delivered and filed the 4th
day of May, 2017

Chad Van Brunt, The Law Office of Chad Van Brunt, John Hunter, The Law Office of John Hunter, 310 S. St. Mary's Street, Suite 1840, San Antonio, TX 78205, for Appellant.

Jennifer M. Avendano, Rene B. Gonzales, Assistant District Attorney, Luis V. Saenz, District Attorney, 964 E. Harrison Street, 4th Floor, Brownsville, TX 78520, for Appellee.

Before Justices Rodriguez, Contreras, and Longoria

## OPINION

Opinion by Justice Contreras

Appellant John Chambers was convicted on fourteen counts of tampering with governmental records with intent to defraud or harm, each a state jail felony. *See* TEX. PENAL CODE ANN. § 37.10(c)(1) (West, Westlaw through 2015 R.S.). He was sentenced to two years in state jail and a $2,800 fine, with the jail sentence suspended and community supervision imposed for five years. On appeal, Chambers argues that the evidence was insufficient to support the conviction, that the trial court lacked jurisdiction, and that the trial court erred in denying a requested jury instruction. We affirm.

## I. BACKGROUND

Chambers served as the chief of police for the small community of Indian Lake in Cameron County.[1] He was the sole paid employee of Indian Lake's police department for most of the year, though during the winter months the department would sometimes employ one other full-time officer. The department also included some twenty to thirty reserve officers appointed by Chambers who were not paid by the department but rather worked other full-time jobs mostly outside of law enforcement. *See* TEX. LOC. GOV'T CODE ANN. § 341.012 (West, Westlaw through 2015 R.S.) (authorizing the establishment of a police reserve force by the governing body of a municipality).

In January 2015, the Texas Commission on Law Enforcement (TCOLE) conducted an audit of Indian Lake's police department. Derry Minor, a TCOLE field agent, administered the audit by examining the department's paperwork regarding, among other things, criminal background checks, firearms qualifications, and medical and psychological testing of the officers. Minor reviewed records for fifteen of the reserve officers and he determined that firearms qualifications records for eight of the re-

---

1. As of the 2010 Census, Indian Lake had a population of 640. U.S. CENSUS BUREAU, https://factfinder.census.gov/faces/nav/jsf/pages/ community_facts.xhtml (last visited May 1, 2017).

serve officers were missing. Believing that the department was required by law to keep such records, Minor notified Chambers of the deficiency via a preliminary audit report dated January 13, 2015. Chambers signed the report, which stated that he had until January 23, 2015 to correct the deficiency.[2]

According to trial testimony, Chambers then instructed Alfredo Avalos, the only other full-time officer with the department at the time, to fill out firearms qualifications forms for fourteen different Indian Lake reserve police officers. The forms indicated that each reserve officer had passed a "firearms qualification practical pistol course" on September 20, 2014 using a .40-caliber Smith & Wesson pistol with a serial number registered as belonging to Chambers.[3] Each of the fourteen named reserve officers testified at trial that they did not, in fact, pass a firearms course on September 20, 2014 using a .40-caliber Smith & Wesson pistol.

Chambers was charged by indictment with fourteen counts of knowingly making false entries in governmental records with the intent to defraud or harm the State of Texas. *See* Tex. Penal Code Ann. § 37.10(c)(1). The jury, having been instructed on the law of parties, *see id.* § 7.02 (West, Westlaw through 2015 R.S.), found Chambers guilty on all fourteen counts. This appeal followed.

## II. Discussion

### A. Governmental Record

By his first issue, Chambers argues that the evidence was insufficient to support

the jury's verdicts because the falsified documents in this case were not "governmental records." *See id.* § 37.10(a)(1).

■ In reviewing sufficiency of the evidence, we consider the evidence in the light most favorable to the verdict to determine whether any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Hacker v. State*, 389 S.W.3d 860, 865 (Tex. Crim. App. 2013); *see Brooks v. State*, 323 S.W.3d 893, 895 (Tex. Crim. App. 2010) (plurality op.) (citing *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979)). A sufficiency review sometimes "involves simply construing the reach of the applicable penal provision in order to decide whether the evidence, even when viewed in the light most favorable to conviction, actually establishes a violation of the law." *DeLay v. State*, 443 S.W.3d 909, 912 (Tex. Crim. App. 2014). "If the evidence establishes precisely what the State has alleged, but the acts that the State has alleged do not constitute a criminal offense under the totality of the circumstances, then that evidence, as a matter of law, cannot support a conviction." *Id.* (citing *Williams v. State*, 235 S.W.3d 742, 750 (Tex. Crim. App. 2007)).

We measure sufficiency by the elements of the offense as defined by a hypothetically correct jury charge. *Malik v. State*, 953 S.W.2d 234, 240 (Tex. Crim. App. 1997). Such a charge would instruct the jury in this case that Chambers is guilty of tampering with governmental records as al-

---

**2.** The report stated: "If an agency fails to correct the deficiencies by the compliance date, TCOLE may take disciplinary action on the license of the chief administrator and/or assess an administrative penalty under Texas Occupations Code 1701.507 of up to one thousand dollars ($1000) per day, per violation."

**3.** Avalos contacted a TCOLE investigator prior to filling out the forms. The investigator directed Avalos to follow Chambers' instructions and, according to Avalos, the investigator told him that he would be "given immunity" for doing so.

leged in the indictment if, as a principal or as a party, he "knowingly ma[de] a false entry in . . . a governmental record." TEX. PENAL CODE ANN. § 37.10(a)(1); *see id.* § 7.02. In accordance with the definition provided in the penal code, the jury was instructed that "governmental record" means "anything belonging to, received by, or kept by government for information" or "anything required by law to be kept by others for information of government." *See id.* § 37.01(2)(A), (B) (West, Westlaw through 2015 R.S.).

Chambers contends specifically that the firearms qualifications forms at issue here are not "governmental records" because they are not legally required to be kept. He notes that, according to regulations promulgated by TCOLE, a police agency is required to keep firearms qualifications records only for each "peace officer" that it "employs," and he argues that this excludes reserve officers. *See* 37 TEX. ADMIN. CODE § 218.9(a) (West, Westlaw through 42 Tex. Reg. No. 1288) ("Each agency or entity that employs at least one peace officer shall: (1) require each peace officer that it employs to successfully complete the current firearms proficiency requirements at least once each calendar year for each type of firearm carried . . . [and] (3) keep on file and in a format readily accessible to the commission a copy of all records of this proficiency."); *see also* TEX. OCC. CODE ANN. § 1701.001(3), (4), (6) (West, Westlaw through 2015 R.S.) (defining "officer" as "a peace officer or reserve law enforcement officer" and defining the two types of officers differently). Chambers further argues that, under the Texas Local Government Code, the appointment and qualifications of reserve municipal police officers are not governed by TCOLE but instead are under the sole purview of the municipality's police chief. *See* TEX. LOC. GOV'T CODE ANN. § 341.012(g) (stating that a reserve municipal police officer who

is not a "peace officer" as defined in code of criminal procedure article 2.12 may carry a weapon "only when authorized to do so by the chief of police and only when discharging official duties as a peace officer"); *see also* TEX. CODE CRIM. PROC. ANN. art. 2.12(3) (West, Westlaw through 2015 R.S.) (defining "peace officer" in part as "those reserve municipal police officers who hold a permanent peace officer license issued under Chapter 1701, Occupations Code").

■ We need not determine whether the documents at issue here were in fact required to be kept by law because that is not an essential element of the offense. As noted, a "governmental record" may be "anything belonging to, received by, or kept by government for information." TEX. PENAL CODE ANN. § 37.01(2)(A). "Government" includes the police department of Indian Lake. *See id.* § 1.07(24) (West, Westlaw through 2015 R.S.) ("'Government' means: (A) the state; (B) a county, municipality, or political subdivision of the state; or (C) any branch or agency of the state, a county, municipality, or political subdivision."). Accordingly, the State did not need to prove that the firearms qualifications records were "required by law to be kept"; instead, it needed only to prove that the records "belong[ed] to, [were] received by, or [were] kept" by the police department of Indian Lake "for information." *See id.* § 37.01(2)(A). It is undisputed that Chambers directed the creation of the records in his capacity as chief of police of Indian Lake. Although Chambers argues that the records were not legally required to be kept, he does not dispute that the records, in fact, "belong[ed] to" and were "kept by" the department "for information." Therefore, the records are "governmental records." *See id.; see also Magee v. State*, No. 01-02-00578-CR, 2003 WL 22862644, at *2 (Tex. App.—Houston

[1st Dist.] Dec. 4, 2003, no pet.) (mem. op., not designated for publication) (rejecting appellant's argument that police offense report was not a "governmental record" because "the State did not prove it was required by law to be kept").

█ Chambers cites three cases where courts have found that a record was not a "governmental record" in the context of a tampering case under penal code section 37.10(a)(1), but we find that those cases are distinguishable. In *Pokladnik v. State,* the appellant, a private citizen, made false entries in affidavits based on a form promulgated by the State Department of Highways and Public Transportation (SDHPT). 876 S.W.2d 525, 527 (Tex. App.—Dallas 1994, no pet.). The Dallas Court of Appeals held that the affidavits were not "governmental records" because they were never submitted to any governmental entity, including SDHPT. *Id.* at 527 (rejecting the argument that the affidavits "belonged" to SDHPT because the form upon which they were based was prescribed by statute). In *Constructors Unlimited, Inc. v. State,* the First District Court of Appeals held that "Contractor's Estimate" forms were not "governmental records" because they did not belong to the government, had not been received by the government, and were not kept by the government for information at the time they were executed. 717 S.W.2d 169, 172 (Tex. App.—Houston [1st Dist.] 1986, pet. ref'd). The Beaumont Court of Appeals reached a similar conclusion in *Siegel v. State,* No. 09-13-00536-CR, 2015 WL 3897860, at *3 (Tex. App.—Beaumont June 24, 2015, pet. ref'd) (mem. op., not designated for publication) (finding, where appellant made a false entry regarding her length of residency in an application for a ballot place, that the application was not a governmental record at the time it was made). Here, the records at issue were governmental records at the time they were made because the police department of Indian Lake is part of the government for purposes of the statute, and Chambers directed the falsification of the records in his capacity as police chief. *See* Tex. Penal Code Ann. § 1.07(24)(C).

█ Chambers contends that this broad interpretation of the definition of "governmental record" would lead to an absurd result because "[i]t would include virtually any piece of paper with information kept at a police department." *See Ex parte Perry,* 483 S.W.3d 884, 902 (Tex. Crim. App. 2016) ("In construing a statute, we give effect to the plain meaning of its language unless the language is ambiguous or the plain meaning leads to absurd results that the legislature could not have possibly intended."). We do not find this result to be absurd or contrary to legislative intent. The Legislature could have added a requirement to the definition of "governmental record" in penal code section 37.01(2)(A)—similar to the one actually contained in section 37.01(2)(B)—that the record at issue be required to be kept by law. *See* Tex. Penal Code Ann. § 37.01(2)(A), (B). It is also noteworthy that section 37.10 provides for a defense to tampering with governmental record in cases where "the false entry or false information could have no effect on the government's purpose for requiring the governmental record." *Id.* § 37.10(f). Though this provision appears to presume that the government has some "purpose for requiring" the record that was falsified, there is no language anywhere in the statute explicitly stating that a record must be "required" by a government entity in order for the record to qualify as a "governmental record." In any event, the defense set forth in section 37.10(f) serves as a safety valve that would generally prevent conviction in cases where the record at issue, though

"kept" by a government entity "for information," is insignificant or otherwise unrelated to the entity's governmental function.[4] The existence of the section 37.10(f) defense therefore undercuts Chambers' argument that a broad interpretation of "governmental records" would lead to an absurd result.

For the reasons set forth above, we conclude that the firearms qualifications records at issue in this case were "governmental records" for purposes of the tampering statute. Chambers' first issue is overruled.

### B. Jury Charge Error

By his second issue, Chambers contends that the trial court erred in denying his request for a jury charge instruction regarding the "distinction between an employee and a volunteer reservist" under section 341.012 of the local government code. He argues that this statute "establishes that the qualifications for reserve officers are set by the municipality and the chief, not TCOLE," and that "no rational trier of fact could have found [him] guilty beyond a reasonable doubt had they been instructed" on this statute.

 The trial court is required to give the jury a written charge "distinctly setting forth the law applicable to the case; not expressing any opinion as to the weight of the evidence, not summing up the testimony, discussing the facts or using any argument in his charge calculated to arouse the sympathy or excite the passions of the jury." TEX. CODE CRIM. PROC. ANN. art. 36.14 (West, Westlaw through 2015 R.S.). An accused generally has the right to an instruction on any defensive issue raised by the evidence, whether that evidence is weak or strong, unimpeached or contradicted, and regardless of what the trial court may or may not think about the credibility of the evidence. *Sanchez v. State*, 400 S.W.3d 595, 598 (Tex. Crim. App. 2013) (noting that "[t]his rule is designed to ensure that the jury, not the judge, decides the credibility of the evidence"). But if the defensive theory is not explicitly listed in the penal code and merely negates an element of the State's case, rather than independently justifying or excusing the conduct, the trial judge should not instruct the jury on it. *Walters v. State*, 247 S.W.3d 204, 209 (Tex. Crim. App. 2007); *see Alonzo v. State*, 353 S.W.3d 778, 784 (Tex. Crim. App. 2011); *see also Giesberg v. State*, 984 S.W.2d 245, 246 (Tex. Crim. App. 1998) (noting that the defendant does not have the burden to prove "[a] defensive issue which goes no further than to merely negate an element of the offense," such as alibi, and concluding that a special instruction on alibi would constitute an unwarranted comment on the weight of the evidence).

Section 341.012 of the local government code provides, in its entirety, as follows:

(a) The governing body of a municipality may provide for the establishment of a police reserve force.

(b) The governing body shall establish qualifications and standards of training for members of the reserve force.

(c) The governing body may limit the size of the reserve force.

(d) The chief of police shall appoint the members of the reserve force. Members serve at the chief's discretion.

---

4. The jury charge contained an instruction as to the section 37.10(f) defense. Chambers does not argue on appeal that the evidence was insufficient to support the jury's implicit rejection of that defense.

(e) The chief of police may call the reserve force into service at any time the chief considers it necessary to have additional officers to preserve the peace and enforce the law.

(f) A member of a reserve force who is not a peace officer as described by Article 2.12, Code of Criminal Procedure, may act as a peace officer only during the actual discharge of official duties.

(g) An appointment to the reserve force must be approved by the governing body before the person appointed may carry a weapon or otherwise act as a peace officer. On approval of the appointment of a member who is not a peace officer as described by Article 2.12, Code of Criminal Procedure, the person appointed may carry a weapon only when authorized to do so by the chief of police and only when discharging official duties as a peace officer.

TEX. LOC. GOV'T CODE ANN. § 341.012. Chambers notes that the State had the burden to prove that the records at issue were "governmental records," and he argues that "[t]he jury was unable to rationally decide this question because it was denied an instruction oh the law applicable to whether this firearms qualification data was required by law to be kept."

■ The trial court did not err in declining to instruct the jury on this statute. The State had the burden to establish all elements of the offense, including that the falsified documents at issue fell within the penal code's broad definition of "governmental records." *See* TEX. PENAL CODE ANN. §§ 37.01(2), 37.10(a)(1). Chambers was not entitled to a jury charge instruction on local government code section 341.012 because, to the extent he asserted a defensive theory relating to that statute, it consisted only of negating this element of the State's case. *See Walters*, 247 S.W.3d at 209. Moreover, we have already concluded that the State met its burden to establish this element, notwithstanding section 341.012. Chambers' second issue is overruled.

## C. Intent to Harm or Defraud

■ Tampering with governmental records is a state-jail felony if "the actor's intent is to defraud or harm another." TEX. PENAL CODE ANN. § 37.10(c)(1). Here, the indictment alleged that Chambers acted with the intent to defraud or harm the State. Chambers argues by two issues that "to defraud or harm the State" means "to deprive the State of a pecuniary or property interest." He contends by his third issue that there was insufficient evidence to support a finding that he intended to deprive the State of a pecuniary or property interest, and he contends by his fourth issue that the district court lacked jurisdiction because no such interest was alleged in the indictment. *See* TEX. CODE CRIM. PROC. ANN. art. 4.05 (West, Westlaw through 2015 R.S.) (setting forth criminal jurisdiction of district courts).

■ The jury charge in this case, consistent with the penal code, defined "harm" as "anything reasonably regarded as loss, disadvantage, or injury, including harm to another person in whose welfare the person affected is interested." *See* TEX. PENAL CODE ANN. § 1.07(25). "Defraud" is not defined in the penal code.[5] An undefined statutory term is "to be understood as ordinary usage allows, and jurors may

---

5. The jury was instructed that "defraud" "should be given the plain meaning it bears in ordinary use."

thus freely read statutory language to have any meaning which is acceptable in common parlance." *Clinton v. State*, 354 S.W.3d 795, 800 (Tex. Crim. App. 2011) (citing *Vernon v. State*, 841 S.W.2d 407, 409 (Tex. Crim. App. 1992)).

Chambers argues that the word "defraud" "inherently refers to wrongful acts bent upon the immoral or unlawful acquisition of property." *See* Merriam-Webster's Online Dictionary, at http://www.merriam-webster.com/dictionary/defraud (last visited May 1, 2017) (defining "defraud" as "to deprive of something by deception or fraud"); *see also McNally v. United States*, 483 U.S. 350, 351, 107 S.Ct. 2875, 97 L.Ed.2d 292 (1987) ("The words 'to defraud' commonly refer to wronging one in his property rights by dishonest methods...."). He contends that the State's interest in the firearms qualifications records at issue "is neither proprietary nor pecuniary, and the State cannot be defrauded solely of its regulatory power." *See Cleveland v. United States*, 531 U.S. 12, 20, 121 S.Ct. 365, 148 L.Ed.2d 221 (2000) (holding that, for purposes of the federal mail fraud statute, a state or municipal license "is not 'property' in the government regulator's hands" and therefore the government does not "part[ ] with 'property' " when it issues a license).

But in the context of the tampering with governmental records statute, courts have construed "intent to defraud" as the intent "to cause another to rely upon the falsity of a representation, such that the other person is induced to act or is induced to refrain from acting." *See Wingo v. State*, 143 S.W.3d 178, 187 (Tex. App.—San Antonio 2004), *aff'd*, 189 S.W.3d 270 (Tex. Crim. App. 2006) (citing 41 Tex. Jur. 3d *Fraud and Deceit* § 9 (1998)); *Martinez v. State*, 6 S.W.3d 674, 678 (Tex. App.—Corpus Christi 1999, no pet.) (finding sufficient evidence to support conviction for tampering with governmental records); *see also State v. Gollihar*, No. 04-07-00623-CR, 2008 WL 2602095, at *2 (Tex. App.—San Antonio July 2, 2008) (mem. op., not designated for publication), *aff'd on other grounds*, No. PD-1086-08, 2010 WL 3700790 (Tex. Crim. App. Sept. 22, 2010); *Christmann v. State*, No. 08-04-00103-CR, 2005 WL 3214832, at *5 (Tex. App.—El Paso 2005, no pet.) (not designated for publication).[6] Under this definition, which is "acceptable in common parlance," *see Clinton*, 354 S.W.3d at 800, the State does not need to allege or prove that Chambers deprived the State of a proprietary or pecuniary interest in order to sustain a felony tampering charge. And the evidence supported a finding that Chambers directed the falsification of the records in order to cause TCOLE to refrain from taking action against him and his department. *See Wingo*, 143 S.W.3d at 187; *Martinez*, 6 S.W.3d at 678.

Chambers notes that "[t]he act of intentionally making a false entry in a governmental record is inherently deceptive" and he argues that, under this interpretation of "intent to defraud," "it is diffi-

---

6. As the State notes, conspiracy to defraud has also been interpreted under federal law to include deception unrelated to pecuniary or property loss. *See Hammerschmidt v. United States*, 265 U.S. 182, 188, 44 S.Ct. 511, 68 L.Ed. 968 (1924) ("To conspire to defraud the United States means primarily to cheat the government out of property or money, but it also means to interfere with or obstruct one of its lawful governmental functions by deceit, craft or trickery, or at least by means that are dishonest. It is not necessary that the government shall be subjected to property or pecuniary loss by the fraud, but only that its legitimate official action and purpose shall be defeated...."); *United States v. Goldberg*, 105 F.3d 770, 773 (1st Cir. 1997) ("[C]onspiracies to defraud are not limited to those aiming to deprive the government of money or property, but include conspiracy to interfere with government functions.").

cult to conceive of any prosecution" under the tampering statute that would not rise to the level of a state jail felony. He contends that construing "intent to defraud" in this fashion, though consistent with the statute's plain language, would lead to an absurd result that the Legislature "could not possibly have intended when it created a base level offense and a separate enhancement for fraud or harm." *See Ex parte Perry,* 483 S.W.3d at 902; *Whitelaw v. State,* 29 S.W.3d 129, 131 (Tex. Crim. App. 2000) (noting that, in conducting an inquiry into a statute's plain meaning, "we generally presume that every word in a statute has been used for a purpose" and "each word, phrase, clause, and sentence should be given effect if reasonably possible") We acknowledge that the interpretation of "intent to defraud" to include deception unrelated to pecuniary or property loss is broad; however, we do not agree that the Legislature could not have intended this result. It is possible for a person to commit tampering with governmental records without triggering the "intent to harm or defraud" enhancement; for example, as Chambers concedes, the offense would be a misdemeanor if the governmental record at issue "is never intended to be seen by another person." In any event, Chambers has not provided us with a reason to deviate from the established precedent, in the tampering with governmental records context, construing intent to defraud as intent "to cause another to rely upon the falsity of a representation, such that the other person is induced to act or is induced to refrain from acting." *See Wingo,* 143 S.W.3d at 187; *Martinez,* 6 S.W.3d at 678.

 For the foregoing reasons, we conclude that a felony tampering charge does not require pleading or proof of a pecuniary or property loss by the government. Accordingly, the evidence was sufficient to support the intent finding and the district court properly exercised jurisdiction.[7] We overrule Chambers' third and fourth issues.[8]

### III. CONCLUSION

The trial court's judgment is affirmed.

---

7. We note that, even if the indictment alleged facts only amounting to a misdemeanor, the district court would still have jurisdiction because the alleged offense involved official misconduct. *See* TEX. CODE CRIM. PROC. ANN. art. 4.05 (West, Westlaw through 2015 R.S.) (providing that district courts "shall have original jurisdiction in criminal cases of the grade of felony" and "of all misdemeanors involving official misconduct"); *see also id.* art. 3.04(1) (West, Westlaw through 2015 R.S.) (defining "official misconduct" as "an offense that is an intentional or knowing violation of a law committed by a public servant while acting in an official capacity as a public servant"); TEX. PENAL CODE ANN. § 1.07(41)(A) (West, Westlaw through 2015 R.S.) (defining "public servant" as, among other things, "an officer, employee, or agent of government").

8. In his brief, Chambers lists a fifth appellate issue challenging the exclusion of certain evidence at trial. However, the issue is not supported by any argument. Accordingly, it is waived. *See* TEX. R. APP. P. 38.1(i).