

# IN THE COURT OF CRIMINAL APPEALS OF TEXAS

---

## NO. PD-0771-17

---

### JOHN CHAMBERS, Appellant

### v.

### THE STATE OF TEXAS

---

### ON APPELLANT'S PETITION FOR DISCRETIONARY REVIEW FROM THE THIRTEENTH COURT OF APPEALS CAMERON COUNTY

---

**SLAUGHTER, J., filed a dissenting opinion in which YEARY, J., joined.**

### DISSENTING OPINION

I agree with the Court that the evidence is insufficient to support the intent-to-defraud-or-harm element. I also agree with the Court that the court of appeals failed to address the issue raised on appeal of whether the evidence was sufficient to overcome the statutory defense. I disagree, however, with remanding the case and would instead render a judgment of acquittal for Appellant because I find that the evidence is insufficient on the element of "governmental record."

In its opinion, the Court effectively decides that the reserve officers' firearms-proficiency records are "governmental records" as a matter of law. In doing so, the Court implicitly creates a bright-line rule that all documents possessed by the government are "received by" or "kept by" the government "for information." *See* TEX. PENAL CODE § 37.01(2)(A). This is not a matter for the Court to decide. This is a question of fact for the jury to decide. The fact issue boils down to whether these records were received or kept by the government "for information." *Id.* "For information" indicates that there is a usefulness or a reason for the government to want or need the records. This issue is debatable and thus raises a fact question that can only be properly resolved by the jury. Here, the jury, by its verdict, implicitly found that the firearms-proficiency records were governmental records. Thus, the Court's job is to determine whether: (a) the jury charge provided the proper instructions and law for a jury to decide that issue, and (b) the evidence was sufficient for the jury to find that the firearms-proficiency records were governmental records. The answer to both questions is "no." Therefore, I would reverse the court of appeals and render an acquittal for the Appellant on the sufficiency issue.

**Background Facts and Procedural History**

Appellant was the chief of police for the Indian Lake Police Department. Following an audit, the Texas Commission on Law Enforcement ("TCOLE") informed Appellant that the department was missing firearms-proficiency training forms for several unpaid reserve officers. TCOLE told Appellant these were required documents and threatened that if he did

not submit them to the agency within seven days, he would face various penalties. Appellant instructed his subordinate, Alfredo Avalos, to fill out the forms using a date Appellant selected, along with the make, model, and serial number of Appellant's own firearm. Avalos reported this to TCOLE. TCOLE instructed Avalos to do what Appellant told him to do and Avalos would receive immunity.

Appellant was charged with and convicted of fourteen counts of tampering with a governmental record under Texas Penal Code Section 37.10(a)(1), which makes it an offense to "knowingly make[] a false entry in, or false alteration of, a governmental record." The Penal Code provides multiple definitions for what constitutes a "governmental record," but only two of those definitions are relevant to this case: (1) "anything belonging to, received by, or kept by government for information, including a court record," or (2) "anything required by law to be kept by others for information of government." TEX. PENAL CODE § 37.01(2)(A), (B).[1] The tampering statute also includes a statutory defense, which provides that "[i]t is a defense to prosecution under Subsection (a)(1) . . . that the false entry or false information could have no effect on the government's purpose for requiring the governmental record." *Id.* § 37.10(f).[2]

_____

[1] The remaining subsections (2)(C) through (2)(F) contain additional possible definitions for governmental record that are not implicated here. TEX. PENAL CODE § 37.01(2). The jury in this case received instructions on the definitions for governmental record provided in Subsections (2)(A) and (2)(B) of Section 37.01, and so I limit my analysis to only those definitions.

[2] Although the jury did receive an instruction on the statutory defense, the court's charge did not precisely track the statutory language. Instead, the jury was instructed, "It is a defense to a prosecution under this offense that the false entry or false information could have no effect on the

At trial, the State repeatedly stressed its position that the firearms-proficiency records were legally *required* to be kept by the police department to comply with TCOLE regulations. Thus, the State appeared to take the position that the documents fell within the definition of governmental records applicable to "anything required by law to be kept by others for information of government." *Id.* § 37.01(2)(B).[3] The State asserted that, pursuant to TCOLE regulations as codified in the Texas Administrative Code,[4] the police department was required by law to create and keep firearms-proficiency records for all unpaid reserve officers.[5] It further asserted that Appellant was guilty of tampering because he had entered in the wrong date of testing, firearm used, and serial number of the firearm used on the firearms-proficiency records of the fourteen reserve officers.[6]

On direct appeal from his convictions, Appellant complained that the evidence was insufficient to show that the records at issue satisfied either of the relevant definitions for a governmental record. *See* TEX. PENAL CODE § 37.01(2)(A), (B). He also complained that the

---

government's purpose for *having* the governmental record." *See* Clerk's Record, at 176 (emphasis added).

[3]     *See* 13 R.R. 7-11, 15, 33.

[4]     *See* TEX. ADMIN. CODE § 218.9.

[5]     *See* 13 R.R. 9-11. For example, during its closing argument, the State argued to the jury that TCOLE has "the power to make these rules. And they made the rules and they said that each agency must have firearms qualification forms. Whether you are a reserve officer, a part-time, full-time, everybody is required to have these forms in their file." *Id.* at 9-10 (emphasis added).

[6]     *See* 13 R.R. 14, 33.

trial court erred by denying his request for a jury instruction on the provisions of Local Government Code Section 341.012,[7] which would have informed the jury that the police chief and municipality, not TCOLE, had authority over unpaid reserve officers such that the records at issue were not required by law. *Chambers v. State*, 523 S.W.3d 681, 688 (Tex. App.—Corpus Christi 2017). Finally, Appellant argued that even if these were governmental records, the statutory defense applied because the "false information could have no effect on the government's purpose for requiring the governmental record." *See* TEX. PENAL CODE § 37.10(f). The court of appeals rejected all of Appellant's arguments and upheld his convictions.

## Discussion

### I.     The evidence is insufficient on the governmental-record element.

While the statute contains multiple definitions of "governmental record," only two of those definitions are implicated here. Texas Penal Code Section 37.01(2)(A) provides that

---

[7]      The statute provides:

> The governing body of a municipality may provide for the establishment of a police reserve force. The governing body shall establish qualifications and standards of training for members of the reserve force. . . . The chief of police shall appoint the members of the reserve force. Members serve at the chief's discretion. . . . An appointment to the reserve force must be approved by the governing body before the person appointed may carry a weapon or otherwise act as a peace officer. . . . Reserve police officers may act only in a supplementary capacity to the regular police force and may not assume the full-time duties of regular police officers without complying with the requirements for regular police officers.

TEX. LOCAL GOV'T CODE § 341.012(a), (b), (d), (g), (h) (internal numbering omitted).

a governmental record is "anything belonging to, received by, or kept by government for information[.]" Section 37.01(2)(B) provides that it is "anything required by law to be kept by others for information of government." Based on the relevant provisions in the Occupations Code and the Local Government Code, the Court finds that the firearms-proficiency records were not "required by law" and do not meet the definition of "governmental record" under Section 37.01(2)(B).

Instead, the Court focuses on the definition in Section 37.01(2)(A). The Court finds that because these firearms-proficiency documents were "received by" and "kept by" TCOLE, a governmental agency, they satisfy the definition of "governmental record" as a matter of law. But whether these records are useful to TCOLE or whether TCOLE has an informational need for the records is a fact issue for the jury.[8] It is not an issue for the Court to decide as a matter of law. By the jury's verdict convicting Appellant, the jury implicitly

---

[8]     Neither this Court nor the Texas Supreme Court has expressly considered whether the designation of something as a governmental record is a question of fact or a question of law. Courts of appeals have found that whether a document is a governmental record is a fact issue for the jury. *See, e.g.*, *Hernandez v. State*, No. 14-17-00643-CR, 2019 WL 1966866, at *4 (Tex. App.—Houston [14th Dist.] May 2, 2019) ("We conclude that the trial evidence would allow a rational trier of fact to find beyond a reasonable doubt that the Offense Report was a governmental record when appellant made the false entry in it."); *James v. State*, No. 12-05-00410-CR, 2007 WL 949619, at *2 (Tex. App.—Tyler Mar. 30, 2007, pet. ref'd) (mem. op., not designated for publication) (addressing the issue of whether the evidence was sufficient "to support the jury's finding that the marriage licence application in question was a governmental record"). I support this approach by the courts of appeals because whether a document meets one of the statutory definitions of "governmental record" involves a factual determination.

found that these documents were "governmental records." Thus, the question becomes whether the evidence supports that finding. It does not.

The Court's "governmental record" analysis focused on the fact that the firearms-proficiency records were "received" by and "kept" by TCOLE. It, however, glosses over the "for information" part of the statutory definition. To meet the definition of "governmental record," the records must be received by or kept by the government "for information." TEX. PENAL CODE § 37.01(2)(A). Thus, as argued by Appellant, there must be a demonstrated governmental purpose for receiving or keeping such records. One does not receive or keep records "for information" unless the information is useful to the governmental agency that receives or keeps it. In this case, TCOLE had no use for the information in the reserve officers' firearms-proficiency records because TCOLE has no involvement with and no authority over reserve officers.

The Texas Occupations Code contains the provisions that apply to TCOLE-regulated peace officers. Under the Code, TCOLE is tasked with establishing the qualifications and training requirements for every "peace officer." But under the Code, "peace officer" is defined separately from a "reserve law enforcement officer." TEX. OCC. CODE § 1701.001(4), (6). A "reserve law enforcement officer" is a person designated as such under Section 341.012 of the Local Government Code. The Occupations Code "does not limit the powers or duties of a municipality or county" unless expressly stated under the Code. *Id.* § 1701.003. Section 1701.355 requires weapons-proficiency exams and exam records for each

peace officer an agency "employs." Reserve officers are appointed by the police chief and are not "employ[ed]" by the agency. TEX. LOC. GOV'T CODE § 341.012.

Texas Local Government Code Section 341.012 provides that municipalities make the decision of whether to have reserve officers and what qualifications and training are required—not TCOLE. The police chief makes the hiring and supervisory decisions regarding those reserve officers:

> The governing body of a municipality may provide for the establishment of a police reserve force. The governing body shall establish qualifications and standards of training for members of the reserve force. . . . The chief of police shall appoint the members of the reserve force. Members serve at the chief's discretion.

TEX. LOC. GOV'T CODE § 341.012 (internal numbering omitted). Reserve officers are only subject to TCOLE regulation and authority when they "assume the full-time duties of regular police officers." *Id.* § 341.012(h).

At trial, the evidence presented demonstrated various reasons why firearms-proficiency records were useful to TCOLE. Such evidence would be sufficient to show why firearms-proficiency records of "peace officers" would be kept by TCOLE "for information." But it is not sufficient to show why "reserve law enforcement officers" firearms-proficiency records would be useful to TCOLE since TCOLE has no authority to train, supervise, or regulate reserve officers. TEX. LOC. GOV'T CODE § 341.012. In fact, a reserve officer does not have to be licensed as a peace officer. *Id.* § 341.012(g). Further, whether a reserve officer is even allowed to carry a gun is the sole discretionary decision of the police chief. *Id.*

An argument could be made that the Indian Lake Police Department ("the Department"), a governmental agency, kept the records "for information." But there was no evidence of that. Appellant, as the police chief, created the records solely to appease TCOLE. Had TCOLE not demanded these records, they never would have been created. Appellant and Avalos were the only two paid employees of the Department. Both of them knew that these documents contained false information. By the time a new police chief was hired, it was public knowledge that these documents contained false information. Thus, the documents were useless to the Department and it did not keep these documents "for information." Moreover, the evidence at trial revealed that when Appellant left the Department, the documents at issue could no longer be found within the Department.[9] Accordingly, the evidence is insufficient to find that these reserve officers' firearms-proficiency documents were "governmental records" kept "for information."

## II. Appellant was harmed by the trial court's refusal of his requested jury instructions.

Appellant requested that the Court provide the jury with the statutory definition of "reserve peace officer" and the statute specifying that only the police chief and municipality have authority over reserve peace officers. The trial court refused these instructions. The Court holds that Appellant suffered no harm by the trial court's refusal to include his

---

[9] TCOLE representative, Derry Minor, testified that in March 2015, shortly after Appellant resigned, "There was [sic] some digital files that [the Department] were keeping when Chief Chambers was there that was [sic] on an external hard drive, and it was gone, and they did not know where it went." 11 R.R. 212.

requested jury instructions. The Court reasons that because it finds that the firearms-proficiency documents were governmental records as a matter of law, the instructions would have had no effect on the jury's determination that the firearms-proficiency records were governmental records. The Court also reasons that Appellant's argument that TCOLE had no purpose for the false information goes solely to the statutory defense and not to the element of "governmental record."

As discussed above, it is improper for this Court to find that the firearms-proficiency records were governmental records as a matter of law. The jury must decide this issue. Thus, the jury charge must provide the jury with the information it needs to reach that decision. *Vasquez v. State*, 389 S.W.3d 361, 366 (Tex. Crim. App. 2012) ("The purpose of the trial judge's jury charge is to instruct the jurors on all of the law that is applicable to the case.").

At trial, the State focused almost exclusively on the "governmental record" definition in Section 37.01(2)(B), emphasizing that TCOLE "required" the documents. The jury was ultimately charged with both definitions under Section 37.01(2)(A) and (2)(B), but given the State's emphasis on the documents being "required," including in the State's closing argument, it is reasonable to assume that the jury relied on that definition. I believe that it is clear on appeal that these firearms-proficiency records were not "required" and without question do not meet the definition of "governmental record" under 37.01(2)(B). It appears that the jury did not understand that the firearms-proficiency records did not meet the

37.01(2)(B) definition. This lack of understanding would have come from the fact that the jury was not provided with the statutory provisions requested by Appellant that would have clarified this matter.

Even if the jury had relied on the definition of "governmental record" under 37.01(2)(A), the jury had to find that the government received or kept the records "for information." As discussed above, "for information" requires that there be a usefulness or purpose for the record. Had the jury been given the requested instructions, the jury would have known that: (1) a reserve officer does not need to be a licenced police officer and is not an employed police officer subject to TCOLE authority; and (2) only a police chief and the municipality have any authority over a reserve officer. As argued by the Appellant in both the trial court and on appeal, this goes directly to the issue of whether TCOLE had a usefulness or purpose for the reserve officers' firearms-proficiency records. The issues involved are based upon obscure and nuanced statutory interplay. To understand the relationship and authority structure, a jury needs the relevant statutory provisions. Without these instructions, a jury would not fully understand the difference between a "peace officer" and a "reserve officer" and would not understand that TCOLE has no authority over reserve officers. These issues are important factors for the jury to understand and weigh in determining whether TCOLE received or kept the records "for information." Even the TCOLE representative who testified did not understand the statutory limitations on TCOLE's authority. How is a jury supposed to understand the law applicable in this case without the

statutory wording? Because the requested instructions were essential to the jury's understanding of the applicable law and go to an element of the offense, Appellant was harmed by the exclusion of the requested instructions. If acquittal were not already mandated by the insufficient evidence, I would remand this case for a new trial.

### Conclusion

Chambers's actions in this case certainly indicate laziness, taking shortcuts, and deceit. But to be convicted of tampering with a governmental record under Section 37.10(a)(1), Chambers had to "knowingly make[] a false entry in, or false alteration of, a governmental record." Two statutory definitions of "governmental record" were provided to the jury: (1) "anything belonging to, received by, or kept by government for information, including a court record," and (2) "anything required by law to be kept by others for information of government." *Id.* § 37.01(2)(A), (B). The records at issue were firearms-proficiency records of "reserve peace officers" who by statute are under the sole supervisory authority of the chief of police. TCOLE has no authority to train, supervise or regulate these reserve officers. Thus, TCOLE could neither "require[]" these records under 37.01(2)(B), nor would it keep such documents "for information" under 37.01(2)(A). Thus, I would find the evidence in this case legally insufficient to prove that the documents are "governmental record[s]" and reverse the court of appeals and render an acquittal for Appellant.

Filed: June 26, 2019
Publish