

## NUMBER 13-16-00079-CR

## COURT OF APPEALS

## THIRTEENTH DISTRICT OF TEXAS

## CORPUS CHRISTI – EDINBURG

**JOHN CHAMBERS,** **Appellant,**

**v.**

**THE STATE OF TEXAS,** **Appellee.**

**On appeal from the 103rd District Court
of Cameron County, Texas.**

## MEMORANDUM OPINION ON REMAND

**Before Chief Justice Contreras and Justices Rodriguez[1] and Longoria
Memorandum Opinion on Remand by Chief Justice Contreras**

This case is on remand from the Texas Court of Criminal Appeals. Appellant John

Chambers, the former police chief of the small community of Indian Lake in Cameron

County, was charged with fourteen counts of tampering with governmental records with

---

[1] The Honorable Nelda V. Rodriguez, former Justice of this Court, was a member of the panel at the time this case was submitted but did not participate in this decision because her term of office expired on December 31, 2018.

intent to defraud or harm, each a state jail felony. *See* TEX. PENAL CODE ANN. § 37.10(c)(1). Trial evidence established that, in January 2015, appellant was advised by a Texas Commission on Law Enforcement (TCOLE) agent that firearms qualifications records for several Indian Lake reserve officers were missing. Appellant then instructed a subordinate officer to create records falsely stating that fourteen reserve officers had passed a firearms training course using appellant's pistol. Appellant was found guilty on all counts—one for each of the falsified documents—and he was sentenced to concurrent two-year prison terms, probated for five years.

In 2017, we affirmed the conviction, concluding that: (1) the documents appellant directed to be falsified were "governmental records" under the broad statutory definition; (2) appellant was not entitled to a jury charge instruction on local government code § 341.012, which authorizes a municipality to establish a reserve police force; and (3) the evidence was sufficient to show that appellant acted with the "intent to defraud or harm" the State, despite the fact there was no allegation or proof that he deprived the State of a pecuniary or property interest. *Chambers v. State*, 523 S.W.3d 681, 685–91 (Tex. App.—Corpus Christi–Edinburg 2017), *aff'd in part & rev'd in part*, 580 S.W.3d 149 (Tex. Crim. App. 2019). As part of his first issue, appellant contended that a broad interpretation of "governmental records" would lead to an absurd result because "[i]t would include virtually any piece of paper with information kept at a police department." 523 S.W.3d at 687. We disagreed, in part because the statutory defense provided in § 37.10(f) "serves as a safety valve that would generally prevent conviction in cases where the record at issue . . . is insignificant or otherwise unrelated to the entity's governmental function." *Id.* at 687–88.

The Texas Court of Criminal Appeals affirmed our judgment with respect to

2

appellant's first and second issues. *See* 580 S.W.3d at 157–58 (agreeing that the documents were "governmental records" and noting that appellant was not harmed by the lack of a jury instruction on local government code § 341.012). However, the Court reversed as to appellant's third issue, concluding that the evidence was insufficient to show appellant acted with the "intent to defraud or harm" because "it was legally impossible for TCOLE to be defrauded by Appellant's deceit and for Appellant to intend to defraud TCOLE through his deceit." *Id.* at 157 ("If the government has no authority to fine the defendant, then it is legally impossible for the defendant to 'defraud' the government out of an opportunity to fine him—even if the defendant believes the government has that authority.").[2] Moreover, the Court held that our sufficiency analysis was "incomplete" because we did not address appellant's argument, made for the first time in his reply brief,[3] that the evidence was insufficient to overcome his statutory

---

[2] The court of criminal appeals held that, to establish an "intent to defraud or harm," "the State must prove that the government has the legal authority to require the keeping of records in order to show that it is legally possible to defraud the government by filing a false record." *Chambers v. State*, 580 S.W.3d 149, 160 (Tex. Crim. App. 2019). Otherwise, the doctrine of legal impossibility would preclude a finding of "intent to defraud or harm." *Id.* (citing *Lawhorn v. State*, 898 S.W.2d 886, 891 (Tex. Crim. App. 1995) ("Legal impossibility has been described as existing where the act if completed would not be a crime, although what the actor intends to accomplish would be a crime.")).

We note that, although appellant argued in this Court that the documents at issue were not "governmental documents" because they were not required to be kept by law, he never argued to this Court that it is legally impossible to "inten[d] to defraud or harm" the State for that reason. *See Wilson v. State*, 311 S.W.3d 452, 457 n.14 (Tex. Crim. App. 2010) (quoting *Tallant v. State*, 742 S.W.2d 292, 294 (Tex. Crim. App. 1987) (plurality op.)) (noting that, with certain exceptions not applicable here, "[a]n appellant may not expect [the court of criminal appeals] to consider a ground for review that does not implicate a determination by the court of appeals of a point of error presented to that court in orderly and timely fashion"). In his third issue, appellant assumed *arguendo* that the State had the "regulatory power to require [him] to . . . keep firearms records for his appointed reservists . . . ." Appellant then strictly limited his intent argument to the notion that, even assuming the State had the legal authority to require the documents, an "intent to defraud or harm" must still include the intent to deprive the State of a pecuniary or property interest.

The decision of the court of criminal appeals is binding on this Court. *See Ex parte Hartfield*, 442 S.W.3d 805, 817 (Tex. App.—Corpus Christi–Edinburg 2014, pet. ref'd); *see also* Tex. Const. art. V, § 5(a).

[3] The Court stated that, though "new issues raised in a reply brief should not be considered," appellant's argument regarding the insufficiency of the evidence to overcome his § 37.10(f) defense "was not a new issue"—instead, it was "related to the arguments in his original brief." *Chambers*, 580 S.W.3d at 161 ("Appellant's sufficiency claim in his reply brief was part and parcel of the statutory interpretation issue he raised in his initial brief.").

defense under penal code § 37.10(f). 580 S.W.3d at 156–61. The Court remanded the case to us to consider that argument. *Id.* at 161–62. Per our request, the parties have filed supplemental briefs addressing that argument. We reverse and remand.

## I. STANDARD OF REVIEW AND APPLICABLE LAW

In reviewing sufficiency of the evidence to support a conviction, we consider the evidence in the light most favorable to the verdict to determine whether any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Hacker v. State*, 389 S.W.3d 860, 865 (Tex. Crim. App. 2013); *see Brooks v. State*, 323 S.W.3d 893, 895 (Tex. Crim. App. 2010) (plurality op.) (citing *Jackson v. Virginia*, 443 U.S. 307, 319 (1979)).

We measure sufficiency by the elements of the offense as defined by a hypothetically correct jury charge. *Malik v. State*, 953 S.W.2d 234, 240 (Tex. Crim. App. 1997). Such a charge accurately sets out the law, is authorized by the indictment, does not unnecessarily increase the State's burden of proof or unnecessarily restrict the State's theories of liability, and adequately describes the particular offense for which the defendant was tried. *Villareal v. State*, 286 S.W.3d 321, 327 (Tex. Crim. App. 2009).

A hypothetically correct charge in this case would instruct the jury to find appellant

---

In his initial brief on appeal, appellant argued that the evidence was insufficient to support his conviction for two limited and very specific reasons: (1) the false documents were not "governmental records" because they were not "required to be kept by law"; and (2) the State failed to prove that he had the intent to deprive the State of a pecuniary or property interest. *See Chambers v. State*, 523 S.W.3d 681, 686 (Tex. App.—Corpus Christi–Edinburg 2017), *aff'd in part & rev'd in part*, 580 S.W.3d at 149. Appellant did not argue in his initial brief, implicitly or explicitly, that the evidence was insufficient to support the jury's rejection of his § 37.10(f) defense. He did not cite § 37.10(f) or its language anywhere in his brief. He did not cite penal code § 2.03, generally concerning defenses to prosecution, nor did he cite any authority regarding the proper standard for reviewing a verdict that rejects such a defense. Appellant's initial brief did not "argue[] that the evidence is insufficient to show that the records were kept for a governmental purpose," 580 S.W.3d at 161—rather, it argued only that the evidence is insufficient to show that the records were "required to be kept by law." Appellant then raised a completely different sufficiency challenge for the first time in his reply brief.

4

guilty if, as a principal or a party, he "knowingly ma[de] a false entry in . . . a governmental record." TEX. PENAL CODE ANN. § 37.10(a)(1). Penal code § 37.10(f) states: "It is a defense to prosecution under [§ 37.10(a)(1)] that the false entry or false information could have no effect on the government's purpose for requiring the governmental record." *Id.* § 37.10(f). This is not an affirmative defense but rather a "defense to prosecution" as defined in § 2.03 of the penal code. *See id.* § 2.03(a). Thus, a hypothetically correct charge would also instruct the jury to acquit if it had a "reasonable doubt on the issue" of whether the § 37.10(f) defense applies. *See id.* § 2.03(d).[4]

---

[4] The actual jury charge in this case, as to the § 37.10(f) defense, differed from the hypothetically correct charge in at least three material respects. First, it instructed: "It is a defense to a prosecution under this offense that the false entry or false information could have no effect on the government's purpose for *having* the governmental record" (emphasis added). The statute refers to the government's purpose for "requiring" the record at issue—not its purpose for "having" the record. *See* TEX. PENAL CODE ANN. § 37.10(f).

The second and third differences appeared in each of the fourteen application paragraphs. Those paragraphs stated:

> Now, if you find from the evidence beyond a reasonable doubt that in Cameron County, Texas, on or about January 13, 2015, the defendant, JOHN CHAMBERS, did then and there, acting alone or as a party as that term has been previously defined, with intent to defraud or harm another, namely, the STATE OF TEXAS, knowingly make a false entry in a governmental record, to wit: firearms qualifications record, said false entry being the name [of the reserve officer], date of qualifying, weapon used, and the weapon serial number, then you will find the defendant guilty as charged in [count number] of the indictment.

> Unless you so believe from the evidence beyond a reasonable doubt, or if you have a reasonable doubt thereof, you will acquit the defendant and say by your verdict "Not Guilty."

> If you do find from the evidence beyond a reasonable doubt that on or about the 13th day of January, 2015, in Cameron County, Texas, the Defendant John Chambers did then and there make a false entry in a government record to wit: the name [of the reserve officer], date of qualifying, weapon used, and weapon serial number, *but you further find from the evidence that the false entry, if any, could have no effect on the government's purpose for requiring the governmental record, if any*, then you will acquit the defendant and say by your verdict "Not Guilty."

(Emphasis added.) The words "if any" are not in the statute and we are aware of no other authority supporting their inclusion in the charge. *See id.* And the application paragraphs failed to instruct the jurors that they must acquit if they had a *reasonable doubt* about the § 37.10(f) defense—instead, contrary to the statute, it stated only that the jurors must acquit if they "find from the evidence" that the defense is true. *See id.* § 2.03(d) ("If the issue of the existence of a defense is submitted to the jury, the court shall charge that a reasonable doubt on the issue requires that the defendant be acquitted.").

The defects in the application paragraphs redounded to the advantage of the prosecution. The inclusion of the words "if any" meant that the jury had to reject the § 37.10(f) defense if it found that the government did not "requir[e]" or had no "purpose for requiring" the records at issue. The omission of

For this type of defense, a defendant bears the burden of production, which requires the production of some evidence that supports the particular defense. *Zuliani v. State*, 97 S.W.3d 589, 594 (Tex. Crim. App. 2003) (citing *Saxton v. State*, 804 S.W.2d 910, 914 (Tex. Crim. App. 1991)). Once the defendant produces such evidence, the State then bears the burden of persuasion to disprove the raised defense. *Id.*; *see* TEX. PENAL CODE ANN. § 2.03(d). The burden of persuasion is not one that requires the production of evidence; rather, it requires only that the State prove its case beyond a reasonable doubt. *Zuliani*, 97 S.W.3d at 594. When a jury finds the defendant guilty, there is an implicit finding against the defensive theory. *Id.* In reviewing the sufficiency of the evidence when a jury has rejected a defense to prosecution, in addition to considering the essential elements of the offense, we must determine, after viewing all the evidence in the light most favorable to the prosecution, whether any rational trier of fact could have found against the appellant on the defensive issue beyond a reasonable doubt. *Saxton*, 804 S.W.2d at 914.

## II. ANALYSIS

In remanding to us, the court of criminal appeals observed that "[t]he meaning of the phrase 'government's purpose for requiring the governmental record' is unclear in the context of the statute." 580 S.W.3d at 156–61. In construing a statute, we give effect to the plain meaning of its language unless the language is ambiguous or the plain meaning leads to absurd results that the legislature could not have possibly intended. *Ex parte Perry*, 483 S.W.3d 884, 902 (Tex. Crim. App. 2016). In determining plain meaning, we

---

reasonable doubt language meant that the jury could acquit based on the § 37.10(f) defense only if it "f[ou]nd [the elements of the defense] from the evidence" and not if there was mere reasonable doubt about the defense. *See id.* Appellant has not argued—either in his initial brief, his reply brief, his motion for rehearing, his brief before the court of criminal appeals, or his supplemental brief—that the jury charge contained reversible error.

6

consult dictionary definitions, apply rules of grammar, and consider words in context. *Id.* We presume that every word in a statute has been used for a purpose and each word, clause, and sentence should be given effect if reasonably possible. *Id.* at 902–03.

Again, the § 37.10(f) defense applies if "the false entry or false information could have no effect on the government's purpose for requiring the governmental record." TEX. PENAL CODE ANN. § 37.10(f). The plain language of § 37.10(f) seems to assume the existence of two facts: (1) that the government "requir[ed]" the record at issue; and (2) that the government had a "purpose" for requiring the record. *See id.* These facts are not essential elements of the offense which the State must allege or prove. *See id.* § 37.10(a); *Chambers*, 580 S.W.3d at 156 ("Under the plain text of the statute, the purpose is relevant to the defense to prosecution, not an element of the offense."). But if appellant met his burden to produce evidence supporting these facts and the other elements of the § 37.10(f) defense, then he would be entitled to an instruction on the defense, and the State's burden would include proving beyond a reasonable doubt that the defense is untrue. *See Zuliani*, 97 S.W.3d at 594.

We assume but do not decide that appellant met his initial burden to produce evidence supporting the § 37.10(f) defense and warranting an instruction thereon. Nevertheless, we conclude the State also met its burden to overcome the defense beyond a reasonable doubt.

"Require" is defined in part as "to demand as necessary or essential; have a compelling need for." MERRIAM-WEBSTER ONLINE DICTIONARY, https://www.merriam-webster.com/dictionary/require (last visited Apr. 6, 2020). "Purpose" means "something set up as an object or end to be attained." *Id.*, https://www.merriam-webster.com/dictionary/purpose (last visited Apr. 6, 2020).

7

The Texas Court of Criminal Appeals held that TCOLE did not have the legal "right or duty" to "require" the firearms qualifications records at issue here. *Chambers*, 580 S.W.3d at 158–60. But Chambers acknowledged receiving a report from TCOLE stating that his reserve officers' firearms qualification records were deficient; giving him ten days to correct the deficiency; and threatening to impose disciplinary action or a $1,000 daily fine if he did not timely correct the deficiency. *See Chambers*, 523 S.W.3d at 685 n.2. Chambers then corrected the supposed deficiency by directing the submission of falsified records. Based upon this evidence, which we view in the light most favorable to the prosecution, a rational juror could have concluded beyond a reasonable doubt that TCOLE, through its agent, actually "required" the records, even though it technically lacked legal authority to do so. *See Lancon v. State*, 253 S.W.3d 699, 707 (Tex. Crim. App. 2008) ("Because the jury is the sole judge of a witness's credibility, and the weight to be given the testimony, it may choose to believe some testimony and disbelieve other testimony."). A rational juror could have also concluded beyond a reasonable doubt that the TCOLE agent required the documents for the specific "purpose" of causing the Indian Lake Police Department to satisfy documentation requirements which he (incorrectly) believed were legally applicable to reserve police officers.

As noted, the court of criminal appeals held that, because TCOLE had no legal authority to require the documents at issue, it could not have possibly been defrauded or harmed by Chambers' falsification of those documents. *Chambers*, 580 S.W.3d at 149. Thus, pursuant to the legal impossibility doctrine, appellant could not have formed the "intent to defraud or harm." *See id.* But the legal impossibility doctrine has been traditionally applied only in the context of attempt crimes and to evaluate intent. *See id.* at 158 n.43; *Lawhorn v. State*, 898 S.W.2d 886, 892 (Tex. Crim. App. 1995) ("Although

8

impossibility is generally applied in the context of attempt crimes, it has also been raised and considered in the context of 'intent' crimes."). The issue discussed here concerns neither attempt nor intent. Thus, the legal impossibility doctrine does not apply, and the fact that TCOLE did not have the legal authority to "require" the documents at issue does not mean that the State could not have disproved the § 37.10(f) defense beyond a reasonable doubt.

Finally, a rational juror could have concluded beyond a reasonable doubt that the false records "could have" had an effect on the agent's "purpose" for "requiring" those records. In particular, the jury could have concluded that submission of the false records induced the agent to refrain from taking disciplinary action or imposing fines against appellant and his police department. A rational juror could have made this finding even if it was aware that TCOLE had no legal authority to take such action.

Accordingly, the evidence was sufficient to support the jury's implicit rejection of appellant's § 37.10(f) defense. We overrule the issue presented on remand.

### III. CONCLUSION

The Texas Court of Criminal Appeals has concluded that the evidence was legally insufficient to support a finding that appellant acted with the "intent to defraud or harm." *Chambers*, 580 S.W.3d at 160. The other elements of the charged offense are supported by sufficient evidence or are not challenged on appeal. Accordingly, the trial court's judgment should be reformed to reflect a conviction on fourteen counts of Class A misdemeanor tampering with governmental records. *See* TEX. PENAL CODE ANN. § 37.10(c)(1); *Thornton v. State*, 425 S.W.3d 289, 300 (Tex. Crim. App. 2014) (stating that an appellate court is "required" to reform a judgment to reflect conviction on a lesser-included offense if: (1) in the course of convicting appellant of the greater offense, the jury

9

must have necessarily found every element necessary to convict appellant on the lesser-included offense; and (2) there is sufficient evidence to support conviction on the lesser-included offense).

We reverse the trial court's judgment and remand for a new punishment hearing, for entry of judgment as set forth above, and for further proceedings consistent with this opinion.

DORI CONTRERAS
Chief Justice

Do not publish.
TEX. R. APP. P. 47.2(b).

Delivered and filed the
9th day of April, 2020.